SCHINDEL, FARMAN & LIPSIUS LLP
14 Penn Plaza Suite 500
(225 West 34th Street)
New York, New York 10122
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Gregory V. Serio, Superintendent of Insurance of the State of New York, as Rehabilitator of FRONTIER INSURANCE COMPANY, and as Assignee of PLATINUM INDEMNITY, LTD, <br><br> Plaintiff, <br><br> vs. <br><br> DWIGHT HALVORSON INSURANCE SERVICES, INC. d/b/a F.S.I.M. INSURANCE SERVICES and FOOD SERVICES INSURANCE MANAGERS, INC., <br><br> Defendants | Case No.: 04 CV 3361 (KMK) <br><br> Hon. Kenneth M. Karas <br><br> **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION** |

REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR COMPEL MEDIATION AND STAY THE INSTANT ACTION

### I. PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of defendants, in reply to plaintiffs' opposition to defendants' motion and in further support of defendants' motion to dismiss the complaint based on lack of jurisdiction and improper venue and to compel mediation and stay the proceeding herein based on the mediation clause in the relevant agreements.

This is an action to recover unspecified money damages based on the claimed breach

*Reply Brief In Support Defendants' Motion*

of written agreements between in Frontier Insurance Company ("Frontier") and Dwight Halvorson Insurance Services ("DHIS"), and the breach of a "Promissory Note" executed by FSIM in favor of Platinum Indemnity Limited ("Platinum"). Plaintiff, brings this action as Rehabilitator of Frontier and, on behalf of Frontier as assignee of Platinum Indemnity Limited ("Platinum").

## II. OBJECTION TO THE DECLARATION OF LAURIE J. WEISS

At the outset, defendants object to the Declaration of Laurie J. Weiss as inadequate and without foundation. Ms. Weiss declares that she is an "employee of Frontier Insurance Company in Rehabilitation" and that she has "personal knowledge of the facts set forth" based on her "involvement with the program at issue." First, it is significant that she does not provide a title or even state how she is otherwise qualified to speak on behalf of "Frontier Insurance Company in Rehabilitation." Second, according to the complaint (at ¶¶ 10-11) Frontier has been in rehabilitation since August 2001. Third, despite the various documents referenced by Ms. Weiss concerning the program, her name does not appear in any of those documents.

## III. RESPONSIVE ARGUMENTS

### A. The Court Does Not have Personal Jurisdiction Over the Defendants

In opposition to defendants' motion, plaintiffs argue, among other things, that defendants have consented to jurisdiction. Significantly, in their opposition to defendants motion to dismiss the complaint for lack of jurisdiction, plaintiffs cite a portion of the "Mediation and Venue" clause as proof of defendants consent to jurisdiction. *See*, plaintiffs' Memorandum of Law at p.7. They conveniently overlook the first part of the sentence which restricts that "consent to jurisdiction" to when the disputes "cannot be resolved by mediation." That condition has not been met since there

has been no mediation or attempt at mediation. Moreover, plaintiffs argue herein that they can simply ignore defendants' request to mediate under the agreement since that clause merely allows one party to ask for mediation without any recourse if the other part ignores that request.

### B. There is no Basis for Venue in This District

In opposition to defendants' motion based on improper venue, plaintiffs rely on authorities for the proposition that defendants have contacts with New York and dealt with employees of Frontier who were based in New York. However, missing from plaintiffs' references is any indication of what action or inaction of the defendants is the wrong alleged. For purposes of venue, it is not sufficient that defendants had contacts with New York. Those contacts "must be substantially proximate to the alleged unlawful act before the cause of action can be said to arise out of those activities." *See, Xedit Corp. V. Harvel Industries Corp.*, 4546 F. Supp. 725, 729 (S.D.N.Y. 1078). Again, since the action is based on diversity of citizenship, and defendants are not New York residents, venue is proper "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391 (a)(1)(2). Plaintiffs still have not said or shown what "events or omissions giving rise to the claim" took place in New York. By way of example, if the claimed wrongful act of defendants was that they failed to collect premiums from an insured in Arizona, would this failure allow the case to be venued in New York?

### C. The Mediation Clause Should be Enforced

At the outset, the core of plaintiffs' opposition to enforcing the mediation clause is the idea that since the language of the mediation clause provides that "either party may request" mediation, plaintiffs can simply ignore the request. This argument, in essence, says that the mediation

clause is meaningless unless both parties agree <u>again</u>, separate from the contract language, to go to mediation. In support of this claim plaintiffs cite *Department of Transportation v. City of Atlanta*, 380 S.E. 2d 265, 268 (Ga. 1989) for the proposition that mediation is a voluntary process. Plaintiffs do not address the Federal Arbitration Act (9 U.S.C. §§ 1-15) or the cases cited by defendants.

First, the citation to *Department of Transportation v. City of Atlanta*, 259 Ga. 305, 380 S.E. 2d 265 (Ga. 1989) does little to support plaintiffs' opposition. Instead, it supports defendants' argument in favor of mediation. *Department of Transportation v. City of Atlanta* does not involve a written agreement between the parties. It involves a court ordered mediation during the process of a protracted litigation. The trial court ordered mediation and the plaintiff objected. On appeal, the Supreme Court of Georgia affirmed the decision to send the parties to mediation, over plaintiff's objection, stating its "wish to encourage the use of mediation as a means of dispute resolution." 259 Ga. at 306, 380 S.E.2d at 267. However, the Georgia Supreme Court reminded the trial court (and the litigants) that "the parties may not be ordered to settle their disputes." *Id.*

Here, defendants do not request an order that the parties must settle their disputes and there is no basis for making such a request. Defendants request enforcement of the mediation clause under the applicable law and expect nothing more than plaintiffs' good faith participation. *See, e.g., Department of Transportation v. City of Atlanta*, 259 Ga. at 306, 380 S.E.2d at 267.

Second, there is no disputing the fact that mediation is a voluntary process. The issue here is enforcement of a prior agreement. The parties <u>voluntarily</u> agreed, in writing, to mediate disputes under the agreement at issue. The suggestion that defendants are somehow improperly seeking to compel mediation is absurd. Defendants seek enforcement of a provision of the same contract under which plaintiffs bring this action. Plaintiffs ignored the request for mediation under the agreement to defendants seek enforcement under the law. *See, e.g.,* 9 U.S.C. § 2; David L.

Threlkeld & Co. V. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir. 1991).

Third, a proper reading of the mediation clause undercuts plaintiffs' argument. The first part of the clause provides that when there are disputes, either party <u>may</u> to request mediation.[1] This is simply a provision that makes sure that both parties have the same right to request mediation. The sentence that follows provides that the requested "mediation <u>shall</u> be conducted pursuant" to the rules of the American Arbitration Association.

The second part of the mediation clause deals with the situation after mediation. It provides: "If <u>any dispute cannot be resolved by mediation</u>, the parties agree that the courts of New York shall have exclusive jurisdiction to resolve any such dispute . . . " (emphasis added). This shows that the parties fully intended to pursue mediation before embarking on expensive and protracted litigation. This agreement is consistent with the applicable law and the policies that underlie that law. See, e.g., 9 U.S.C. § 2. See, also, David L. Threlkeld & Co. V. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir. 1991). Moreover, it is consistent with Department of Transportation v. City of Atlanta, 259 Ga. 305, 380 S.E. 2d 265 (Ga. 1989) which plaintiffs cite in opposition to defendants' motion.

Plaintiffs cite the first part of the "Mediation and Venue" clause as proof that defendants consented to jurisdiction while conveniently overlooking the first part of the sentence which restricts that "consent to jurisdiction" to when the disputes "cannot be resolved by mediation." See, plaintiffs' Memorandum of Law at p. 7

Finally, at the extreme end of plaintiffs' argument against enforcing the mediation clause is the suggestion that plaintiffs would not, in good faith, fully participate in any mediation.

---

[1] Plaintiffs interpret this to say: *"You may request and we can ignore and you have no recourse."*

*Reply Brief In Support Defendants' Motion*     Page 5 of 7

This is suggested is in plaintiffs' Memorandum of Law where it is argued:

> To require FIC to mediate when, at this time, it has no interest in doing so is inconsistent with [the principle that 'for mediation to be effective, it is necessary that the parties have a good faith interest in settling their disputes']. Absent FIC's commitment to what by definition is a consensual process, any compelled mediation of this dispute is virtually doomed to failure.

See, Plaintiffs' Memorandum of Law at p.22.

One obvious conclusion to be drawn from the above argument is that plaintiffs would act, in bad faith, to sabotage a mediation of the parties' disputes. As such, while counsel in this matter have so far acted in good faith and with the utmost professional courtesies, the above argument must be addressed.

First, the principle that "for mediation to be effective, it is necessary that the parties have a good faith interest in settling their disputes" applies equally now as when the parties first agreed to mediate disputes under the agreement. Additionally, the principle that parties "should act in good faith" to resolve their disputes applies whether in mediation or in litigation. Second, it is not expected that plaintiffs' counsel would do other than "act in good faith," whether in this litigation or at mediation, or that plaintiffs' counsel would tolerate their clients' acting in bad faith. Finally, the above argument appears to flow from the premise that defendants seek to compel plaintiffs to do something that plaintiffs did not agree to do. Again, this is a false premise. Defendants seek to enforce the mediation clause and expect that both sides will act in good faith to resolve their differences.

Here, the mediation clause in the Limited Agency Agreement governs "business done under this Agreement" without any limitation. The complaint seeks to recover money damages for various unspecified breaches of the terms and conditions of the Limited Agency Agreement. Accordingly, the mediation clause governs the issues in dispute and the Court should issue an order

compelling mediation and saying all proceedings in this action related to the Limited Agency Agreement. 9 U.S.C. § 3.

## IV. CONCLUSION

For the foregoing reasons, Defendants Dwight Halvorson Insurance Services, Inc. ("DHIS") and Food Service Insurance Managers, Inc. ("FSIM") request that the Court grant their motion.

Dated:      October 15, 2004
            New York, New York

                                        SCHINDEL, FARMAN & LIPSIUS LLP
                                        Attorneys Defendants

                                        By: /s/ Lorienton Palmer
                                        Lorienton N.A. Palmer (LP3934)
                                        Marc I. Kunkin (MK 4182)
                                        14 Penn Plaza, Suite 500
                                        New York, NY 10122
                                        Telephone No.: (212) 563-1710
                                        Fax: (212) 695-6602
                                        File No.: 3090.0001

TO:     ENTWISTLE & CAPPUCCI, LLP
        299 Park Avenue - 14th Floor
        New York, NY 10171
        (212) 894-7200
        Attn:  William S. Gyves, Esq.
               Adfam F. Jachimowski, Esq.