UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
Gregory V. Serio, Superintendent of Insurance      :     04 CV 3361 (KMK)
of the State of New York, as Rehabilitator of     :
FRONTIER INSURANCE COMPANY, and as     :
Assignee of PLATINUM INDEMNITY, LTD.,     :

                      Plaintiff,     :    **DECLARATION OF**
                                   :    **<u>ANDREW MCCOMB</u>**

        -against-     :

DWIGHT HALVORSON INSURANCE     :
SERVICES, INC. d/b/a/ F.S.I.M. INSURANCE     :
SERVICES and FOOD SERVICE INSURANCE     :
MANAGERS, INC.,     :

                   Defendants.     :
-----------------------------------------------------------------------x

      ANDREW MCCOMB, pursuant to 28 U.S.C. § 1746, being of full age, hereby

declares as follows:

      1.     I am the President and Chief Executive Officer of Allegro Insurance and

Risk Management Ltd., a provider of insurance management services based in Hamilton,

Bermuda.

      2.     I respectfully submit this Declaration in support of the motion for partial

summary judgment brought by the plaintiff in the above-captioned matter, Gregory V. Serio,

Superintendent of Insurance of the State of New York, as both the Rehabilitator of Frontier

Insurance Company ("FIC") and Assignee of Platinum Indemnity, Limited ("Platinum").

      3.     I have personal knowledge of the facts set forth herein, based on my direct

involvement with the business transactions at issue in this case, as well as a review of my files

with respect to the subject matter of this litigation.

4.      During the time period relevant to this dispute, I was the President and Chief Executive Officer of Powerscourt Management Limited ("Powerscourt"), an insurance manager based in Hamilton, Bermuda.

5.      Powerscourt at the time served as the manager of Platinum, a rent-a-captive reinsurer also based in Hamilton, Bermuda. I served as a Director and Chief Financial Officer of Platinum at the time.

6.      I understand that the Superintendent's motion relates to the promissory note defendant Food Service Insurance Managers, Inc. ("FSIM") executed on or about November 8, 2000 in Platinum's favor (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit A.

7.      As I discuss in greater detail below, the sole purpose of the Note was to secure FSIM's obligations to Platinum under a contract between FSIM and Platinum relating to the insurance program giving rise to this litigation.

8.      The Note reflects that FSIM's obligations thereunder were unconditional. Had FSIM's obligations not been unconditional, the Note would have afforded Platinum little, if any, security -- a circumstance which would have defeated the very purpose of the Note.

9.      FSIM's obligations under the Note were entirely independent of the rights and obligations of any of the other entities involved in the insurance program in question, including FIC and defendant Dwight Halvorson Insurance Services, Inc. ("DHIS").

10.     FSIM has defaulted on the Note. Although it made a number of payments on the Note, FSIM ceased making those payments in April 2001. Despite due demand, FSIM failed and refused to meet its obligations under the Note. As a result, an unpaid balance of $322,515.00 remains on the Note, exclusive of interest.

11.    Platinum has assigned its rights under the Note to the Superintendent. I understand that as Platinum's assignee, the Superintendent now brings this action to enforce the terms of the Note.

### Overview of the FSIM Program

12.    This dispute arises in the context of a workers' compensation insurance program FSIM and DHIS developed for and marketed to the food service industry in the United States. The program came to be known as the FSIM Program.

13.    FSIM and DHIS were not insurers. For the FSIM Program to succeed, they needed to affiliate with an established carrier willing to issue the insurance policies providing the coverage for those clients participating in the FSIM Program. FSIM and DHIS ultimately affiliated with FIC to obtain those insurance policies.

14.    In addition to the insurance policies, another component of the FSIM Program was the creation of a captive insurance facility. Captive insurance facilities, amongst other purposes, provide an alternative source of insurance capacity to insureds for whom insurance coverage through the traditional commercial insurance marketplace may be unavailable or prohibitively expensive.

15.    For a variety of regulatory and financial reasons, large numbers of captive facilities are domiciled in offshore jurisdictions such as Bermuda.

16.    These offshore captives typically are not licensed to issue insurance policies within the United States. As a result, they typically act solely as reinsurers and partner with a "fronting" insurer licensed to issue policies in the United States to the insureds. The fronting carrier issues these policies and then transfers a significant portion of the risk back to the offshore captive pursuant to a reinsurance agreement.

3

17.    One variation of the captive insurance approach is to structure the program using what is called a rent-a-captive.

18.    The rent-a-captive is designed to accommodate insureds or risk participants who either are unable or unwilling to assume the higher costs or administrative burdens associated with establishing and managing their own captive, a process which can involve substantial upfront costs and require significant capital investment.

19.    A rent-a-captive facility involves a captive formed by one or more sponsors. The sponsor or sponsors then "rent" the captive's capital, surplus, services and expertise to various insureds or groups of insureds or risk participants. Platinum was such a rent-a-captive insurance facility.

20.    The insureds or risk participants who use the rent-a-captive typically purchase non-voting preferred shares in the rent-a-captive, pay a fee and post some form of collateral to shield the rent-a-captive reinsurer from any underwriting losses that may arise. In essence, the insured or program participant, as the non-voting preferred shareholder, agrees to assume all of the business risk of the program.

21.    In the typical rent-a-captive facility, separate rent-a-captive accounts or "cells" are established within the overall captive infrastructure for each insured or distinct set of insureds. Premiums collected on policies issued under a particular program are credited to the appropriate rent-a-captive account and loss payments made in connection with those policies are debited from the appropriate account.

## The Subscription Agreement

22.    In or about late 1997, Platinum agreed to assist FSIM in establishing a separate account, or cell, within Platinum's structure for use in connection with the FSIM Program.

23.    Platinum entered into a Subscription and Shareholder Agreement ("Subscription Agreement") with FSIM on or about January 16, 1998.  A true and correct copy of the Subscription Agreement is attached hereto as Exhibit B.

24.    Therein, as part of its rent-a-captive arrangement with Platinum, FSIM agreed to purchase a $125,000.00 non-voting redeemable preferred share in the captive.

25.    Under the Subscription Agreement, FSIM obligated itself to pay to Platinum all amounts necessary to remedy any "Negative Balance" in its account.

26.    In essence, a Negative Balance would arise if the losses Platinum was compelled to reinsure and the expenses it incurred under the FSIM Program outstripped both FSIM's contributions to the rent-a-captive account and the level of premium dollars flowing into the account.  It was not intended that Platinum should assume the risk of such a Negative Balance or any liability with respect to such a shortfall.  Consistent with industry practice, that risk and liability were to be assumed solely by FSIM as the program participant and non-voting preferred shareholder.

## The Negative Balance

27.    The FIC insurance policies relating to the FSIM Program spanned two distinct periods:  Policy Year 1 (January 1, 1998 - December 31, 1998) and Policy Year 2 (January 1, 1999 - December 31, 1999).

28.     At the conclusion of Policy Year 1, FSIM had incurred a Negative Balance in its account. This Negative Balance had a direct and significant impact on Platinum's ability to meet its obligations to FIC with respect to the FSIM Program.

29.     Despite my efforts to resolve this issue, as of October 1999 -- i.e., well into Policy Year 2 -- FSIM had failed to remedy the Negative Balance for Policy Year 1.

30.     In or about October 1999, I was advised that FIC intended to pull out of the FSIM Program at the conclusion of Policy Year 2.

31.     After receiving notice of FIC's intention, I engaged in further discussions with FSIM regarding the Negative Balance in the FSIM Program. On or about October 13, 1999 (with the end of Policy Year 2 fast approaching), I advised FSIM that Platinum was prepared to continue to facilitate the FSIM Program. I advised FSIM, however, that Platinum would do so only if it first received appropriate capital and/or contingent capital from FSIM to remedy the existing Negative Balance and adequately fund its account.

32.     There was no immediate resolution, however, to FSIM's Negative Balance, which continued to negatively impact Platinum's ability to meet its obligations to FIC with respect to the FSIM Program.

**The Note**

33.     On about June 19, 2000, I met with FSIM representatives to discuss the Negative Balance.

34.     At this meeting, the FSIM representatives suggested that one means of remedying the Negative Balance was to have FSIM post a promissory note as collateral for its performance of FSIM's obligations with respect to paying down the Negative Balance by installments.

35.     After a period of negotiations, Platinum and FSIM reached an agreement whereby FSIM would execute a promissory note in Platinum's favor to serve as collateral for FSIM's performance of its obligation to remedy the Negative Balance and adequately fund its cell within the Platinum structure.

36.     On or about November 8, 2000, I forwarded the Note to FSIM for execution. The principal of the Note was $469,515.00, an amount stipulated by the parties to be equal to FSIM's Negative Balance as of November 8, 2000. A true and correct copy of the November 8, 2000 fax by which I forwarded the execution copy of the Note to FSIM is attached hereto as Exhibit C.

37.     On the same day, November 8, 2000, FSIM executed the Note and returned it to me. A true and correct copy of FSIM's fax returning the Note is attached hereto as Exhibit D. FSIM subsequently forwarded to me the original copy of the Note, a copy of which is attached hereto as Exhibit A.

38.     Had FSIM not executed the Note, Platinum would have commenced legal proceedings in order to resolve the dispute over the Negative Balance. By executing the Note, FSIM avoided this consequence.

**FSIM's Default**

39.     FSIM made its first monthly payment of $21,000.00 on the Note on or about August 28, 2000.

40.     FSIM proceeded to make six additional payments on the Note of $21,000.00 each, for a total of $147,000.00.

41.     FSIM made its last monthly $21,000.00 payment on the Note in or about April 20, 2001, which left a balance of approximately $322,515.00, plus interest, remaining on the Note.

42.    Beginning in June of 2001, I made repeated demands to, among others, FSIM's general counsel, Robert Franceschi, that FSIM make good on its obligations under the Note.

43.    Despite my repeated demands, FSIM never made any additional payment on the Note.

**The Assignment**

44.    In the wake of FIC's termination of its involvement in the FSIM Program as of January 1, 2000, a dispute arose between the Superintendent and Platinum regarding FIC and Platinum's respective rights and obligations under a Reinsurance Agreement relating to the FSIM Program.

45.    On or about December 2, 2002, I executed (on Platinum's behalf) a Commutation Agreement deemed effective December 27, 2002. Pursuant to the Commutation Agreement, Platinum and the Superintendent resolved their differences amicably. A true and correct copy of the Commutation Agreement is attached hereto as Exhibit E.

46.    Simultaneous with my execution of the Commutation Agreement, I also assigned to the Superintendent Platinum's claims against FSIM (the "Assignment"). Specifically, Platinum assigned to the Superintendent all of its right, title and interest in the Subscription Agreement, as well as the Note itself. A true and correct copy of the Assignment is attached hereto as Exhibit F.

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct. Executed on November 11, 2005.

ANDREW MCCOMB

**EXHIBIT A**

## PROMISSORY NOTE

**PRINCIPAL: $469,515.00**                                    **November 8, 2000**

FOR VALUE RECEIVED on the above referenced date, Food Service Insurance Managers, Inc., a California corporation (**"Debtor"**), promises to pay to the order of Platinum Indemnity Limited, a Bermuda Company (**"Creditor"**), at Windsor Place, 3rd Floor, 18 Queen Street, Hamilton, Bermuda the principal sum of Four Hundred and Sixty Nine Thousand, Five Hundred and Fifteen Dollars and 00/100 Cents ($469,515.00) with interest as set forth herein, payable as follows:

A.      Principal shall be paid on this Promissory Note (this **"Note"**) as follows: Twenty One Thousand Dollars and No Cents ($21,000.00) on the fifteenth day of each month commencing with August 15, 2000. Such payment to be made by bank wire transfer to the bank and account detailed in Schedule 1 attached hereto, and any other bank and account as may be advised by the Creditor from time to time.

B.      Subject to paragraph D below, interest at a variable rate, namely the Federal Funds Rate (the target interest rate for banks borrowing reserves among themselves as announced and in effect from time to time by the Federal Open Markets Committee of the U.S. Federal Reserve Board) plus two percentage points, shall accrue on principal outstanding from time to time. Subject to paragraph D below, interest payments shall be due on the fifteenth day of every month until Maturity.

C.      Should interest not be paid by Debtor as stated, it shall thereafter bear like interest as the principal. Unpaid interest shall be compounded at a rate not to exceed simple interest on the unpaid principal at the maximum rate permitted by law.

D.      Notwithstanding anything to the contrary herein, interest shall not begin to accrue on any amounts due hereunder until such time as the "Separate Account" maintained for Debtor by Creditor ceases to have a positive balance. The **"Separate Account"** is an account maintained by Creditor on its books which represents an ownership interest of Debtor in certain segregated assets of Creditor pursuant to the Subscription and Shareholder Agreement (**"Agreement"**) dated January 16, 1998 between the Creditor and the Debtor and executed by both parties in Hamilton, Bermuda. For purposes of this Note, Creditor shall determine from time to time whether the Separate Account has a positive balance in accordance with the terms of the Agreement, and such determination shall be conclusive and binding on Debtor, absent manifest error. If Debtor nonetheless disputes Creditor's determination, Debtor shall pay the interest and principal amounts due hereunder as if such determination were undisputed and such dispute did not exist and Debtor's sole recourse against Creditor for such manifest error shall be an action separate from this Note.

E.      This Promissory Note may be prepaid at any time without penalty. The

FIC/FSIM 000135

balance of principal and any outstanding interest as well as any other sum remaining unpaid on this Note shall be paid in full no later than August 15, 2002.

      F.    If any of the following events shall occur and be continuing for any reason whatsoever (and whether such occurrence shall be voluntary or involuntary or come about or be effected by operation of law or otherwise), an **"Event of Default"** shall be deemed to have occurred:

      (1)    If Debtor fails to pay any principal or interest on this Note when it becomes due and payable, or Debtor fails to pay any other cost, fee, expense or other amount owing to Creditor under this Note; or

      (2)    Debtor becomes insolvent or generally fails to pay, or admits in writing its inability or refusal to pay, debts as they become due; or Debtor applies for, consents to, or acquiesces in the appointment of a trustee, receiver or other custodian for Debtor or any property thereof, or makes a general assignment for the benefit of creditors; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for Debtor or for a substantial part of the property of Debtor and is not discharged within 30 days; or any bankruptcy, reorganization, debt arrangement, or other case or proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation, is commenced in respect of Debtor, and if such case or proceeding is not commenced by Debtor, it is consented to or acquiesced in by Debtor, or remains for 30 days undismissed; or Debtor takes any action to authorize, or in furtherance of, any of the foregoing.

      G.    THIS PROMISSORY NOTE SHALL BE GOVERNED BY BERMUDA LAW WITHOUT REGARD OR CONFLICT OF LAWS PRINCIPLES. SUIT HEREUNDER MAY BE BROUGHT IN A BERMUDA COURT. DEBTOR HEREBY IRREVOCABLY AND KNOWINGLY WAIVES ANY OBJECTION TO SUIT IN SUCH COURT DUE TO INCONVENIENCE OR UNSUITABILITY OF FORUM, VENUE OR OTHERWISE, AND HEREBY WAIVES ANY RIGHT DEBTOR MAY HAVE TO A JURY TRIAL. The foregoing shall not prejudice Creditor's right to bring suit in any jurisdiction it deems desirable or to enforce any judgments obtained in any jurisdiction. The remedies provided herein are not exclusive and Creditor shall have the option to utilize any one or more remedies available at law or in equity to enforce the provisions of this Note.

      H.    Principal and interest shall be payable in lawful money of the United States.

      I.    Debtor waives presentment, demand, notice of demand, protest, notice-of protest, notice of dishonor and notice of non-payment and agrees to pay such costs, expenses and reasonable attorneys' fees as may be adjudged by a court in connection with any litigation relating to this Note. No delay or omission of Creditor in exercising any right or remedy hereunder shall impair any such right or operate as a waiver thereof. No single or partial exercise by Creditor of any remedy shall preclude any further exercise thereof.

FIC/FSIM 000136

J.    Creditor may assign this Note without Debtor's consent; Debtor may not assign this Note without Creditor's prior written consent.

K.    If any provision or any word, term, clause or part of any provision of this Note shall be invalid for any reason, the same shall be ineffective, but the remainder of this Note and of the provisions shall not be affected and shall remain in full force and effect.

IN WITNESS WHEREOF, Debtor has caused this Note to be executed by its officers thereunto duly authorized, all as of the day and year first above written.

FOOD SERVICE INSURANCE
MANAGERS, INC.

By: _____
President

ATTEST:

By: _____
Secretary

FIC/FSIM 000137

PROMISSORY NOTE DATED NOVEMBER 8, 2000

SCHEDULE 1

BANK ACCOUNT DETAILS AND ROUTING INSTRUCTIONS

**PLEASE REQUEST THAT CHASE MANHATTAN BANK N.A. WIRE FUNDS TO THE INSTRUCTIONS BELOW <u>UNDER A SWIFT 100 ORDER.</u> This will cause the Bank of Butterfield & Son Ltd. in Bermuda to be notified in advance of funds to be received into Platinum Indemnity Limited-FSIM Buttress MMF A/C # 006922.**

| | |
|---|---|
| BANK: | Chase Manhattan Bank, N.A.<br>Building F, Floor 8<br>4 Chase Metrotech Centre<br>New York, N.Y. 11245, USA |
| ABA #: | 021-000-021 |
| SWIFT: | CHAS US 33 |

**For Credit to:**

| | |
|---|---|
| BENEFICIARY BANK: | **The Bank of N.T. Butterfield & Son Ltd.<br>Hamilton, Bermuda** |
| ACCOUNT NUMBER: | **001-106-7808** |
| | **For Further Credit to: Butterfield Money<br>Market Fund Ltd.** |
| BENEFICIARY ACCOUNT NUMBER: | **006922** |
| BENEFICIARY ACCOUNT NAME: | **Platinum Indemnity Limited-FSIM** |

FIC/FSIM 000138

**EXHIBIT B**

# Subscription and Shareholders Agreement

**This Agreement** is made as of January 16, 1998

**Between**

(1)     Platinum Indemnity Limited a company organized and existing under the laws of the Islands of Bermuda (hereinafter "Platinum") and

(2)     Food Service Insurance Managers Inc., a corporation organized and existing under the laws of California (hereinafter the "Shareholder").

**Witnesseth**

**Whereas**, Shareholder wishes to purchase the "Preferred Share" for the "Purchase Price", and

**Whereas**, Platinum wishes to repurchase the "Preferred Share" on the "Repurchase Date" at the "Repurchase Price", and

**Whereas**, Platinum wishes to enter into certain reinsurance contracts with the Ceding Companies pursuant to which Platinum will reinsure certain of the liabilities of the Ceding Companies under one or more contracts of insurance produced by the Shareholder.

**Now, therefore**, in consideration of the premises and mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1)     **Definitions.** The following terms are defined as follows:

    a)     "Business Day" shall mean any day other than a Saturday or Sunday or a day on which banks located in Bermuda are authorized or required by law or executive order to close.

    b)     "Ceding Companies" shall mean the reinsured or reinsureds which are parties to the Treaties.

    c)     "Dividend Date" shall mean the dates shown on Schedule 2 on which a dividend to the extent permitted by law shall be declared to the owner of record of the Preferred Share.

    d)     "Net Premium" shall mean the aggregate net premium received by Platinum under the Treaties after all deductions made by, or credited or paid to, the Ceding Companies including, but not limited to, ceding commissions, boards, bureaus, taxes, fees, licenses, residual risk facility charges, guarantee fund assessments and other charges as provided in the Treaties.

    e)     "Preferred Share" shall mean the preferred share to be issued by Platinum pursuant to the provisions of this Agreement as more particularly described in Schedule 1 hereto.

    f)     "Purchase Price" shall mean One-hundred and twenty-five thousand United States Dollars(US$125,000.00).

    g)     "Purchase Price Administrative Fee" shall mean (i) during the term of the Treaties (or any renewal thereof), 1% of the average "Purchase Price Investment Funds" held by Platinum during each 12 month period beginning on the date the Purchase Price for the Preferred Share is paid and on each anniversary thereof, and (ii) after the termination or expiration of the Treaties, 1% of the average Purchase Price Investment Funds held by Platinum during each 12 month period.

1

FIC/FSIM 000127

h)  "Purchase Price Investment Funds" shall mean the total of the Purchase Price proceeds, plus any additional contribution to the capital of Platinum, and all accumulated investment income earned thereon (which is not the subject of prior dividend payment).

i)  "Repurchase Date" shall mean five (5) business days after the Ceding Companies acknowledge in writing to Platinum that Platinum has no further liability under the Treaties.  Platinum shall be deemed to have no further liability when all losses on policies ceded to Platinum pursuant to the Treaties have been fully run-off or the aggregate limit of the liability of Platinum under the Treaties has been exhausted or, all liability under the Treaties has been commuted.

j)  "Repurchase Price" shall mean an amount equal to the Purchase Price, plus any additional contribution to the capital of Platinum by the Shareholder, plus any Undistributed Profits Attributable to the Preferred Share.

k)  "Treaties" shall mean the reinsurance agreement or agreements identified in Schedule 2 between Platinum, as assuming reinsurer, and the Ceding Companies, the subject of which are policies of insurance issued pursuant to business produced by the Shareholder.

l)  "Treaties Administrative Fee" shall mean, (i) during the term of the Treaties (or any renewal thereof) 1% of the average "Treaties Investment Funds" during each 12 month period beginning on the date the Purchase Price for the Preferred Share is paid and on each anniversary thereof, and (ii) after the termination or expiration of the Treaties, 1% of the average treaties Investment Fund during each 12 month period.

m)  "Treaties Investment Funds" shall mean (i) the Net Premium, plus (ii) all amounts actually recovered and received by Platinum under the Treaties by way of salvage or subrogation (net of expenses allocable to Platinum), less (iii) all losses and expenses paid and all premium returned by Platinum to the Ceding Companies pursuant to the Treaties, less (iv) Underwriting Profit previously paid out in dividends.

n)  "Underwriting Profit or Loss" shall mean ("except as otherwise provided in this Agreement")
   i)   the "Net Premium", plus
   ii)  the amounts actually recovered and received by Platinum under the Treaties contracts by way of salvage or subrogation (net of expenses allocable to Platinum); less
   iii) all losses and loss expenses paid, or incurred by Platinum under the Treaties (including reserves set aside for incurred but not reported losses and expenses, as determined by Platinum, but in no event in an amount less than the amount estimated by the Ceding Companies); less
   iv)  the Treaties Administrative Fee; and less
   v)   the cost of aggregate stop loss reinsurance; less
   vi)  the actual cost incurred by Platinum in establishing and maintaining letter(s) of credit in favor of the Ceding Companies pursuant to the Treaties; plus
   vii) investment income earned on the capital provided by the Shareholder as required from time to time, and directly related to the underwriting of the Treaties.

o)  The "Undistributed Profit Attributable to the Preferred Share" on any date is the aggregate sum of the following:

   i)   The amount of investment income, if any, earned by Platinum on the Purchase Price Investments Funds, since the last Dividend Date (if any);

   ii)  The amount of investment income, if any, earned by Platinum on the Treaties Investment Funds since the last Dividend Date (if any); less (ii)the Treaties Administrative Fee allocable to the period since the last Dividend Date (if any); plus or minus

   iii) The Underwriting Profit or Loss since the last Dividend Date (if any); plus or minus

2

iv) any Underwriting Profit or Loss prior to the last Dividend Date (if any) not previously distributed by way of dividend.

2) **The Purchase Price.** The Shareholder agrees to purchase and Platinum agrees to issue the Preferred Share at the Purchase Price. Platinum shall issue and deliver the Preferred Share to the Shareholder within five (5) business days after the Shareholder pays Platinum the Purchase Price. The Purchase Price shall be paid within thirty (30) days of the execution of this Agreement. The Purchase Price may be provided in the form of a letter of credit.

3) **Dividends.** To the extent permitted by law, Platinum agrees to cause a dividend to be declared to the owner of record of the Preferred Share on each Dividend Date in an amount equal to the positive Undistributed Profit Attributable to the Preferred Share (if any).

4) **Negative Balance/ Indemnification**

   a) In the event the Undistributed profit Attributable to the Preferred Share, minus the cumulative amounts of dividends paid to the Shareholder is, at any time, negative (the"Negative Balance", the Shareholder agrees, within 30 days after receipt of written demand by Platinum, to pay Platinum the Negative Balance minus all previous payments made to Platinum since the last Dividend date (if any) under this paragraph; provided, however, that, for purposes of this provision only, Underwriting Profit or Loss shall not take into account unpaid losses and expenses other than such losses and expenses which Platinum believes are likely to be paid within the following ninety (90) days.

   b) The Shareholder will indemnify and hold Platinum harmless from all dangers, costs, losses, fees, liabilities, judgements, penalties and expenses (including without limitation, reasonable attorneys' fees and expenses of legal counsel) that Platinum may suffer, sustain, incur or become subject to, whether directly or indirectly, arising out of, based upon, resulting from or in connection with the failure of the Shareholder to comply with Paragraph 4.(a) hereof.

5) **Maintenance of Records.** Platinum shall maintain such records as are necessary to verify the amount of Investment income earned on the Purchase Price Investment Funds and on the Treaties Investment Funds and shall produce copies of such records to the Shareholder within a reasonable time after the Shareholder's written request therefor.

6) **Repurchase Procedure.** On the Repurchase Date, Platinum shall repurchase the Preferred Share for the Repurchase Price, from the Shareholder. The Shareholder shall deliver the certificate representing the Preferred Share together with proper instrument of assignment and transfer thereof duly executed in blank.

7) **Representations and Warranties.** The Shareholder represents and warrants that:

   a) It is purchasing the Preferred Share for the Shareholder's own account for investment purposes and not with a view to resale or distribution.

   b) The Shareholder has adequate means for providing for the Shareholder's current needs and possible personal contingencies and has no need for liquidity of the Shareholder's investment and has no reason to anticipate any change in personal circumstances, financial or otherwise, which may cause or require the sale or distribution of the Preferred Share.

   c) The Shareholder understands that the Preferred Share has not been and will not be registered under the United States Securities Act of 1933, as amended, and that the Preferred Share may not be sold, transferred, pledged, hypothecated, assigned or otherwise disposed of.

3

FIC/FSIM 000129

8) **Preferred Share Not Transferable.** The Shareholder covenants and agrees not to, or attempt to, sell, transfer, pledge, hypothecate, assign or otherwise dispose of the Preferred Share.

9) It is acknowledged and agreed that the certificate representing the Preferred Share shall bear the following legend:

   "The share evidenced by this certificate has not been registered under the Securities Act of 1933, as amended. This share has been acquired for investment purposes only and may not be sold, transferred, pledged, hypothecated, assigned or otherwise disposed of."

10) **Waiver or Modification.** Neither this Agreement nor any of the terms hereof may be changed, waived or discharged orally, but only by an instrument in writing signed by the party against which enforcement of such change, waiver or discharge is sought.

11) **Entire Agreement.** This Agreement constitutes the sole and entire agreement of the parties hereto relating to the subject matter hereof and supersedes all prior agreements and understanding related to the subject matter hereof.

12) **Agreement Governs.** The parties agree that in the event the terms of this Agreement conflict with the bye-laws of Platinum, the parties shall cause the bye-laws to be amended to conform with this Agreement; provided, however, in the event such bye-laws are not amended, this Agreement shall govern.

13) **Notices.** All notices, request, demands or other communications required or permitted to be given hereunder shall be in writing and shall be delivered by facsimile, by hand, or by first class mail, addressed to the address for service of the parties as follows:

   If to Platinum:
   Platinum Indemnity Limited,
   Windsor Place, 3rd Floor, 18 Queen Street, Hamilton, Bermuda,
   Fax No. 441-292-1196,
   Attn: Andrew McComb

   If to the Shareholder:
   Food Service Insurance Managers Inc.,
   3300 Douglas Boulevard, Suite 295
   Roseville, CA 95661-3807
   Attn: J. Daniel Henke, Secretary

   Unless shown to have been received earlier, any such notice so delivered shall be deemed to have been given:

a) if delivered by hand when delivered if delivered during normal business hours of the recipient or if delivered outside such hours at the opening of business on the next business day of the recipient;

b) if delivered by facsimile three hours after the time of transmission if transmitted during normal business hours of the recipient or if delivered outside such hours at the opening of business on the next business day of the recipient;

c) if mailed by first class mail or by registered mail three days after the date of mailing unless the notice was mailed during postal strike or other postal disruption in which case the notice shall be deemed to have been received within three days after the resumption of normal mail service.

4

FIC/FSIM 000130

Any party by notice in writing given to the other party in the manner specified above may change the name and address to which notices, request, demands or other communication to which shall be given pursuant to this Agreement.

14) **Governing Law and Jurisdiction.** This Agreement shall be constructed and enforced in accordance with, and governed by, the laws of Bermuda. Subject to Paragraph 14. The courts of Bermuda shall be vested with the non-exclusive jurisdiction to resolve any dispute arising out of or related to this Agreement and the Shareholder will submit to the jurisdiction of any court of competent jurisdiction in Bermuda and will comply with all requirements necessary to give such court jurisdiction.

15) **Arbitration.** If any dispute shall arise between the parties to this Agreement with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such disputes arises before or after termination of this Agreement, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may appoint a second arbitrator. If the two arbitrators fail to agree on the selection of a third arbitrator within thirty days of their appointment, either of the parties may apply upon notice to the other to the President of Bermuda Bar Association to name a third arbitrator. All arbitrators shall be active or retired executive officers of insurance or reinsurance companies not under the control of either party to this Agreement and having no personal or financial interest in the outcome of the arbitration. Each party shall submit its case to the arbitrator within thirty days of the appointment of the third arbitrator. The decision in writing of any two arbitrators , when filed with the parties hereto, shall be final and binding on both parties. Unless otherwise specified in the decision of the arbitrators, the expense of the arbitrators and of the arbitration shall be equally divided between the two parties. The said arbitration shall take place in Bermuda unless some other place is mutually agreed upon by the parties to this Agreement. Except as to matters otherwise provided herein, the provisions of the Bermuda International Conciliation and Arbitration Act, 1993 (or any successor statute) shall apply; and the procedural rules set forth in Section III and IV of UNCITRAL shall be followed.

16) **Currency.** All amounts referred to herein are expressed in United States Dollars and all payments shall be made in such dollars.

5

FIC/FSIM 000131

**In witness whereof**, the parties hereto have duly executed this Agreement as of the date first above written.

**Platinum Indemnity Limited**

In Hamilton, Bermuda this 16 day of January, 1998:

By: _____

Name: Andrew McComb

Title: Chief Financial Officer

Witness

**Food Service Insurance Managers Inc.,**

In Hamilton, Bermuda this 16 day of January, 1998:

By: _____

Name: J. Daniel Henke

Title: Secretary

Witness

6

**Schedule 1**

**<u>Description of the Preferred Share</u>**

**Share classification**

Class G non-voting Redeemable Preferred Share

**Number of shares authorised in class**

One (1) - (This is a separate class and no other shares will be issued in this class. There are/will be other classes of shares in Platinum, including without limitations, other preferred shares forming separate classes.)

**Par value**

US$100 (One hundred dollars).

**Issue price per share**

US$125,000.00

**Rights in general meetings/ members or shareholders' resolutions**

No right to participate in or to sign any written resolution of the members or shareholders of Platinum and no right (a) to receive notice of, (b) to attend at or, (c) vote at any general meeting of the members or shareholders of Platinum EXCEPT where Bermuda law provides for such rights for all members or shareholders for certain actions e.g.. discontinuance (relocation) of Platinum.

**Dividend and distribution rights**

Only as provided for in the Shareholder Agreement attached. Such rights are accumulated when payment of a dividend at any particular Dividend Date is not permitted under Bermuda law and paid at the next Dividend Date if permitted without any interest.

**Redemption terms**

The Class G Non-voting Redeemable Preferred Shares carry no right of redemption by the Members. Platinum has the right to repurchase the Class G Non-voting Redeemable Preferred Shares as provided for in the Shareholder Agreement attached.

**Other Preferred share series classes**

The holder of the Class G Non-voting Redeemable Preferred Shares acknowledges and agrees that Platinum may issue from time to time other shares carrying rights and restrictions similar to the Class G Non-voting Redeemable Preferred Shares but where the dividend and distribution rights are contingent on the underwriting results of other Treaties which are distinct from the Treaties detailed in Schedule 2 to this agreement, and such shareholders have signed a shareholder agreement with similar terms to that to which this is attached (mutatis mutandis).

FIC/FSIM 000133

**Schedule 2**

**Treaties**

The following reinsurance agreements:

**Ceding Company**                    **Company Reference**          **Period**

Frontier Insurance Company            PLA/FIC/007                    1/1/1998 – 12/31/1998

**Dividend date**

Platinum will compute an initial dividend 24 months from the effective date of this agreement, and annuallly thereafter, in accordance with the provisions of clause 3 of this agreement. Such dividend, if declared, to be paid 30 days thereafter.

**Additional capital contribution**

In addition to the Purchase Price of $125,000.00, additional capital contributions equal to 4% of gross written premiums under the program will be remitted on a monthly basis for policies written in the previous 30 days. These additional contributions will be included in the Purchase Price Investment Funds as specified in the text of the agreement.

8

FIC/FSIM 000134

**EXHIBIT C**

# PLATINUM

## PLATINUM INDEMNITY LIMITED

P.O. Box HM 2267, Windsor Place, 3rd floor, 18 Queen Street, Hamilton HM JX, Bermuda
Tel: (441) 295-8495   Fax: (441) 292-1196

## FACSIMILE COVER SHEET

To: Dwight Halvorson                          From: Andy McComb

Company: FSIM                                 Date: 8-Nov-00    Time: 14:16

Fax Number: 916-773-0402                      Number of Pages: Five

Dwight,

**PROMISSORY NOTE**

Further to your voice mail message, please find attached the promissory note with amended amount due per my fax to you of October 18, 2000.

Best regards,

THIS FACSIMILE TRANSMISSION CONTAINS CONFIDENTIAL AND PRIVILEGED INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL(S) NAMED ON THE TRANSMISSION SHEET. IF YOU ARE NOT THE INTENDED RECIPIENT YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION AND OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS FACSIMILE TRANSMISSION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE CALL US.

# PROMISSORY NOTE

**PRINCIPAL: $469,515.00**                                    **November 8, 2000**

FOR VALUE RECEIVED on the above referenced date, Food Service Insurance Managers, Inc., a California corporation ("**Debtor**"), promises to pay to the order of Platinum Indemnity Limited, a Bermuda Company ("**Creditor**"), at Windsor Place, 3rd Floor, 18 Queen Street, Hamilton, Bermuda the principal sum of Four Hundred and Sixty Nine Thousand, Five Hundred and Fifteen Dollars and 00/100 Cents ($469,515.00) with interest as set forth herein, payable as follows:

    A.    Principal shall be paid on this Promissory Note (this "**Note**") as follows: Twenty One Thousand Dollars and No Cents ($21,000.00) on the fifteenth day of each month commencing with August 15, 2000. Such payment to be made by bank wire transfer to the bank and account detailed in Schedule 1 attached hereto, and any other bank and account as may be advised by the Creditor from time to time.

    B.    Subject to paragraph D below, interest at a variable rate, namely the Federal Funds Rate (the target interest rate for banks borrowing reserves among themselves as announced and in effect from time to time by the Federal Open Markets Committee of the U.S. Federal Reserve Board) plus two percentage points, shall accrue on principal outstanding from time to time. Subject to paragraph D below, interest payments shall be due on the fifteenth day of every month until Maturity.

    C.    Should interest not be paid by Debtor as stated, it shall thereafter bear like interest as the principal. Unpaid interest shall be compounded at a rate not to exceed simple interest on the unpaid principal at the maximum rate permitted by law.

    D.    Notwithstanding anything to the contrary herein, interest shall not begin to accrue on any amounts due hereunder until such time as the "Separate Account" maintained for Debtor by Creditor ceases to have a positive balance. The "**Separate Account**" is an account maintained by Creditor on its books which represents an ownership interest of Debtor in certain segregated assets of Creditor pursuant to the Subscription and Shareholder Agreement ("**Agreement**") dated January 16, 1998 between the Creditor and the Debtor and executed by both parties in Hamilton, Bermuda. For purposes of this Note, Creditor shall determine from time to time whether the Separate Account has a positive balance in accordance with the terms of the Agreement, and such determination shall be conclusive and binding on Debtor, absent manifest error. If Debtor nonetheless disputes Creditor's determination, Debtor shall pay the interest and principal amounts due hereunder as if such determination were undisputed and such dispute did not exist and Debtor's sole recourse against Creditor for such manifest error shall be an action separate from this Note.

    E.    This Promissory Note may be prepaid at any time without penalty. The

CHI99 3516723-1.040965.0010

balance of principal and any outstanding interest as well as any other sum remaining unpaid on this Note shall be paid in full no later than August 15, 2002.

F.    If any of the following events shall occur and be continuing for any reason whatsoever (and whether such occurrence shall be voluntary or involuntary or come about or be effected by operation of law or otherwise), an **"Event of Default"** shall be deemed to have occurred:

(1)    If Debtor fails to pay any principal or interest on this Note when it becomes due and payable, or Debtor fails to pay any other cost, fee, expense or other amount owing to Creditor under this Note; or

(2)    Debtor becomes insolvent or generally fails to pay, or admits in writing its inability or refusal to pay, debts as they become due; or Debtor applies for, consents to, or acquiesces in the appointment of a trustee, receiver or other custodian for Debtor or any property thereof, or makes a general assignment for the benefit of creditors; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for Debtor or for a substantial part of the property of Debtor and is not discharged within 30 days; or any bankruptcy, reorganization, debt arrangement, or other case or proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation, is commenced in respect of Debtor, and if such case or proceeding is not commenced by Debtor, it is consented to or acquiesced in by Debtor, or remains for 30 days undismissed; or Debtor takes any action to authorize, or in furtherance of, any of the foregoing.

G.    THIS PROMISSORY NOTE SHALL BE GOVERNED BY BERMUDA LAW WITHOUT REGARD OR CONFLICT OF LAWS PRINCIPLES.  SUIT HEREUNDER MAY BE BROUGHT IN A BERMUDA COURT.  DEBTOR HEREBY IRREVOCABLY AND KNOWINGLY WAIVES ANY OBJECTION TO SUIT IN SUCH COURT DUE TO INCONVENIENCE OR UNSUITABILITY OF FORUM, VENUE OR OTHERWISE, AND HEREBY WAIVES ANY RIGHT DEBTOR MAY HAVE TO A JURY TRIAL.  The foregoing shall not prejudice Creditor's right to bring suit in any jurisdiction it deems desirable or to enforce any judgments obtained in any jurisdiction.  The remedies provided herein are not exclusive and Creditor shall have the option to utilize any one or more remedies available at law or in equity to enforce the provisions of this Note.

H.    Principal and interest shall be payable in lawful money of the United States.

I.    Debtor waives presentment, demand, notice of demand, protest, notice-of protest, notice of dishonor and notice of non-payment and agrees to pay such costs, expenses and reasonable attorneys' fees as may be adjudged by a court in connection with any litigation relating to this Note.  No delay or omission of Creditor in exercising any right or remedy hereunder shall impair any such right or operate as a waiver thereof.  No single or partial exercise by Creditor of any remedy shall preclude any further exercise thereof.

J.     Creditor may assign this Note without Debtor's consent; Debtor may not assign this Note without Creditor's prior written consent.

K.     If any provision or any word, term, clause or part of any provision of this Note shall be invalid for any reason, the same shall be ineffective, but the remainder of this Note and of the provisions shall not be affected and shall remain in full force and effect.

IN WITNESS WHEREOF, Debtor has caused this Note to be executed by its officers thereunto duly authorized, all as of the day and year first above written.

**FOOD SERVICE INSURANCE MANAGERS, INC.**

By: _____
      President

ATTEST:

By: _____
      Secretary

PROMISSORY NOTE DATED AUGUST___, 2000

SCHEDULE 1

BANK ACCOUNT DETAILS AND ROUTING INSTRUCTIONS

**PLEASE REQUEST THAT CHASE MANHATTAN BANK N.A. WIRE FUNDS TO THE INSTRUCTIONS BELOW <u>UNDER A SWIFT 100 ORDER.</u> This will cause the Bank of Butterfield & Son Ltd. in Bermuda to be notified in advance of funds to be received into Platinum Indemnity Limited-FSIM Buttress MMF A/C # 006922.**

BANK:                                    Chase Manhattan Bank, N.A.
                                         Building F, Floor 8
                                         4 Chase Metrotech Centre
                                         New York, N.Y. 11245, USA

ABA #:                                   021-000-021

SWIFT:                                   CHAS US 33

For Credit to:

BENEFICIARY BANK:                        **The Bank of N.T. Butterfield & Son Ltd.
                                         Hamilton, Bermuda**

ACCOUNT NUMBER:                          **001-106-7808**

                                         **For Further Credit to: Butterfield Money
                                         Market Fund Ltd.**

BENEFICIARY ACCOUNT NUMBER:              **006922**

BENEFICIARY ACCOUNT NAME:                **Platinum Indemnity Limited-FSIM**

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 4277 |
| CONNECTION TEL | 728585#619167730402 |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 11/08 14:16 |
| USAGE T | 00'54 |
| PGS. SENT | 5 |
| RESULT | OK |

# PLATINUM

## PLATINUM INDEMNITY LIMITED

P.O. Box HM 2267, Windsor Place, 3rd floor, 18 Queen Street, Hamilton HM JX, Bermuda
Tel: (441) 295-8495   Fax: (441) 292-1196

## FACSIMILE COVER SHEET

| | |
|---|---|
| To: Dwight Halvorson | From: Andy McComb |
| Company: FSIM | Date: 8-Nov-00   Time: 14:16 |
| Fax Number: 916-773-0402 | Number of Pages: Five |

Dwight,

**PROMISSORY NOTE**

Further to your voice mail message, please find attached the promissory note with amended amount due per my fax to you of October 18, 2000.

Best regards,

**EXHIBIT D**



# $\mathcal{D}$wight $\mathcal{H}$alvorson

### INSURANCE SERVICES

Name: ANDY McComb

Location: _____

Fax Number: (441) 292-1196

FROM:  JULIE BRYERTON, CIC; CISR
NUMBER OF PAGES: 4  (INCLUDING COVER PAGE)

DATE: 11 / 8 /00  TIME: 12:00  [ ]AM [✓]PM

RE: _____

COMMENTS: ANDY,

ATTACHED is the SIGNED NOTE FOR F.S.I.M. I will SEND the ORIGINAL and a cover NOTE.

Thanks,

JBH

If you do not receive all the pages indicated above, please give us a call at (916) 773-0206 and contact JULIE BRYERTON as soon as possible so that we may transmit again.
Our fax# is: (916) 773-0402

3300 Douglas Blvd., Suite 295, Roseville, CA 95661-3807
(916) 773-0206 • FAX (916) 773-0402

# PROMISSORY NOTE

**PRINCIPAL: $469,515.00**                           **November 8, 2000**

      FOR VALUE RECEIVED on the above referenced date, Food Service Insurance Managers, Inc., a California corporation ("**Debtor**"), promises to pay to the order of Platinum Indemnity Limited, a Bermuda Company ("**Creditor**"), at Windsor Place, 3rd Floor, 18 Queen Street, Hamilton, Bermuda the principal sum of Four Hundred and Sixty Nine Thousand, Five Hundred and Fifteen Dollars and 00/100 Cents ($469,515.00) with interest as set forth herein, payable as follows:

      A.     Principal shall be paid on this Promissory Note (this "**Note**") as follows: Twenty One Thousand Dollars and No Cents ($21,000.00) on the fifteenth day of each month commencing with August 15, 2000. Such payment to be made by bank wire transfer to the bank and account detailed in Schedule 1 attached hereto, and any other bank and account as may be advised by the Creditor from time to time.

      B.     Subject to paragraph D below, interest at a variable rate, namely the Federal Funds Rate (the target interest rate for banks borrowing reserves among themselves as announced and in effect from time to time by the Federal Open Markets Committee of the U.S. Federal Reserve Board) plus two percentage points, shall accrue on principal outstanding from time to time. Subject to paragraph D below, interest payments shall be due on the fifteenth day of every month until Maturity.

      C.     Should interest not be paid by Debtor as stated, it shall thereafter bear like interest as the principal. Unpaid interest shall be compounded at a rate not to exceed simple interest on the unpaid principal at the maximum rate permitted by law.

      D.     Notwithstanding anything to the contrary herein, interest shall not begin to accrue on any amounts due hereunder until such time as the "Separate Account" maintained for Debtor by Creditor ceases to have a positive balance. The "**Separate Account**" is an account maintained by Creditor on its books which represents an ownership interest of Debtor in certain segregated assets of Creditor pursuant to the Subscription and Shareholder Agreement ("**Agreement**") dated January 16, 1998 between the Creditor and the Debtor and executed by both parties in Hamilton, Bermuda. For purposes of this Note, Creditor shall determine from time to time whether the Separate Account has a positive balance in accordance with the terms of the Agreement, and such determination shall be conclusive and binding on Debtor, absent manifest error. If Debtor nonetheless disputes Creditor's determination, Debtor shall pay the interest and principal amounts due hereunder as if such determination were undisputed and such dispute did not exist and Debtor's sole recourse against Creditor for such manifest error shall be an action separate from this Note.

      E.     This Promissory Note may be prepaid at any time without penalty. The

balance of principal and any outstanding interest as well as any other sum remaining unpaid on this Note shall be paid in full no later than August 15, 2002.

F.    If any of the following events shall occur and be continuing for any reason whatsoever (and whether such occurrence shall be voluntary or involuntary or come about or be effected by operation of law or otherwise), an "Event of Default" shall be deemed to have occurred:

(1)    If Debtor fails to pay any principal or interest on this Note when it becomes due and payable, or Debtor fails to pay any other cost, fee, expense or other amount owing to Creditor under this Note; or

(2)    Debtor becomes insolvent or generally fails to pay, or admits in writing its inability or refusal to pay, debts as they become due; or Debtor applies for, consents to, or acquiesces in the appointment of a trustee, receiver or other custodian for Debtor or any property thereof, or makes a general assignment for the benefit of creditors; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for Debtor or for a substantial part of the property of Debtor and is not discharged within 30 days; or any bankruptcy, reorganization, debt arrangement, or other case or proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation, is commenced in respect of Debtor, and if such case or proceeding is not commenced by Debtor, it is consented to or acquiesced in by Debtor, or remains for 30 days undismissed; or Debtor takes any action to authorize, or in furtherance of, any of the foregoing.

G.    THIS PROMISSORY NOTE SHALL BE GOVERNED BY BERMUDA LAW WITHOUT REGARD OR CONFLICT OF LAWS PRINCIPLES.  SUIT HEREUNDER MAY BE BROUGHT IN A BERMUDA COURT.  DEBTOR HEREBY IRREVOCABLY AND KNOWINGLY WAIVES ANY OBJECTION TO SUIT IN SUCH COURT DUE TO INCONVENIENCE OR UNSUITABILITY OF FORUM, VENUE OR OTHERWISE, AND HEREBY WAIVES ANY RIGHT DEBTOR MAY HAVE TO A JURY TRIAL.  The foregoing shall not prejudice Creditor's right to bring suit in any jurisdiction it deems desirable or to enforce any judgments obtained in any jurisdiction.  The remedies provided herein are not exclusive and Creditor shall have the option to utilize any one or more remedies available at law or in equity to enforce the provisions of this Note.

H.    Principal and interest shall be payable in lawful money of the United States.

I.    Debtor waives presentment, demand, notice of demand, protest, notice of protest, notice of dishonor and notice of non-payment and agrees to pay such costs, expenses and reasonable attorneys' fees as may be adjudged by a court in connection with any litigation relating to this Note.  No delay or omission of Creditor in exercising any right or remedy hereunder shall impair any such right or operate as a waiver thereof.  No single or partial exercise by Creditor of any remedy shall preclude any further exercise thereof.

J.    Creditor may assign this Note without Debtor's consent; Debtor may not assign this Note without Creditor's prior written consent.

K.    If any provision or any word, term, clause or part of any provision of this Note shall be invalid for any reason, the same shall be ineffective, but the remainder of this Note and of the provisions shall not be affected and shall remain in full force and effect.

IN WITNESS WHEREOF, Debtor has caused this Note to be executed by its officers thereunto duly authorized, all as of the day and year first above written.

FOOD SERVICE INSURANCE
MANAGERS, INC.

By: _____
    President

ATTEST:

By: _____
    Secretary

PROMISSORY NOTE DATED AUGUST___, 2000

SCHEDULE 1

BANK ACCOUNT DETAILS AND ROUTING INSTRUCTIONS

**PLEASE REQUEST THAT CHASE MANHATTAN BANK N.A. WIRE FUNDS TO THE INSTRUCTIONS BELOW UNDER A SWIFT 100 ORDER. This will cause the Bank of Butterfield & Son Ltd. in Bermuda to be notified in advance of funds to be received into Platinum Indemnity Limited-FSIM Buttress MMF A/C # 006922.**

| | |
|---|---|
| BANK: | Chase Manhattan Bank, N.A.<br>Building F, Floor 8<br>4 Chase Metrotech Centre<br>New York, N.Y. 11245, USA |
| ABA #: | 021-000-021 |
| SWIFT: | CHAS US 33 |
| **For Credit to:** | |
| BENEFICIARY BANK: | **The Bank of N.T. Butterfield & Son Ltd.<br>Hamilton, Bermuda** |
| ACCOUNT NUMBER: | **001-106-7808** |
| | **For Further Credit to: Butterfield Money Market Fund Ltd.** |
| BENEFICIARY ACCOUNT NUMBER: | **006922** |
| BENEFICIARY ACCOUNT NAME: | **Platinum Indemnity Limited-FSIM** |

**EXHIBIT E**

## COMMUTATION AGREEMENT

REINSURANCE COMMUTATION AND RELEASE AGREEMENT (the "Commutation") effective as of the latest date of execution set forth below, by and between GREGORY V. SERIO, Superintendent of Insurance of the State of New York as Rehabilitator (the "Rehabilitator") of Frontier Insurance Company ("Frontier") and Platinum Indemnity Limited, a company organized and existing under the laws of the Islands of Bermuda ("Platinum") (collectively the "Parties").

WHEREAS, effective January 1, 1998, Frontier entered into a certain reinsurance agreement with Platinum, attached hereto as Exhibit 1 (the "Agreement"), whereby Platinum was committed to reinsure certain risks of Frontier in respect of Frontier's liability on certain direct policies classified as food manufacturing and related industries and produced by Dwight Halvorson Insurance Services of Roseville, California.

WHEREAS, on October 15, 2001, Frontier was placed into rehabilitation by Order of the Supreme Court of the State of New York (the "Order of Rehabilitation"), attached hereto as Exhibit 2. Pursuant to the Order of Rehabilitation and Article 74 of the New York Insurance Law, the Rehabilitator was ordered to take possession of the property and conduct the business of Frontier;

WHEREAS, certain disputes have arisen between the Parties regarding the rights, duties and obligations pursuant to the Agreement;

WHEREAS, pursuant to a Subscription and Shareholders Agreement made as of January 16, 1998 and annexed hereto as Exhibit 3, Food Services Insurance Managers, Inc., a corporation organized and existing under the laws of California ("FSIM"), has undertaken to pay certain amounts to Platinum as additional capital contributions and as indemnification for negative balances in the account for Undistributed Profit Attributable to the Preferred Share (the "FSIM Obligations");

FIC/FSIM 000139

WHEREAS, in partial performance of the FSIM Obligations, FSIM issued a promissory note to Platinum on or about November 8, 2000 pursuant to which FSIM undertook to pay $469,515.00 together with interest thereon (the "FSIM Promissory Note"), copy of which is annexed as Exhibit 4; and

WHEREAS, FSIM defaulted on the FSIM Promissory after making only seven monthly payments of $21,000.00, leaving a remaining indebtedness in excess of $322,515.00; and

WHEREAS, Platinum has issued written demands to FSIM for payment of amounts due and outstanding in respect of the FSIM Obligations, including the FSIM Promissory Note, and FSIM has substantially failed to pay such amounts; and

WHEREAS, recognizing the value of settling such disputes expeditiously, Platinum has offered to pay and the Rehabilitator has agreed to accept the sum of **$2,918,851.65**, comprised of $15,000.00 cash and an assignment of the FSIM Obligations, including without limitation the FSIM Promissory Note, in accordance with the terms set forth herein in full and final satisfaction of Platinum's and the Rehabilitator's past, present, and future liabilities and/or obligations to each other, relating to or arising out of the Agreement(s).

NOW THEREFORE, the Rehabilitator and Platinum agree as follows:

### ARTICLE A - PAYMENTS

1. Within fifteen (15) days of service upon Platinum of an Order approving the terms of this Commutation, Platinum shall pay to the Rehabilitator by wire transfer the sum of **$15,000.00** and shall deliver a duly executed Assignment in the form annexed hereto as Exhibit 5 assigning to the Rehabilitator all right, title and interest in the FSIM Obligations, including without limitation the FSIM Promissory Note (the "Settlement Consideration").

2

FIC/FSIM 000140

2. The Rehabilitator shall accept the Settlement Consideration in full and final settlement of any and all amounts claimed to be due by Platinum to the Rehabilitator relating to or arising out of the Agreement.

## ARTICLE B - RELEASES

1. Simultaneous with transfer of the Settlement Consideration to the Rehabilitator, the Rehabilitator, its predecessors, successors, and assigns and its or their respective past, present and future employees, agents, attorneys, and legal representatives hereby release, acquit, and forever discharge Platinum, its predecessors, successors, heirs and assigns, and its or their respective past, present, and future officers, directors, shareholders, employees, agents, receivers, trustees, attorneys, and legal representatives from any and all claims, demands, causes of action, liabilities, obligations, costs, disbursements, fees, attorneys' fees, expenses, damages, and injuries of every kind, nature, and description based on, relating to, or arising out of the Agreement whether or not now known, suspected, reported, or claimed, whether fixed or contingent, and whether currently existing or arising in the future, provided, however, that nothing in this Commutation shall be construed so as to negate or diminish the liability of FSIM in respect of the FSIM Obligations, including without limitation the ongoing obligation to fund negative balances calculated as of future dates.

2. Simultaneous with transfer of the Settlement Consideration to the Rehabilitator, Platinum, its predecessors, successors, heirs and assigns, and its or their respective past, present, and future officers, directors, shareholders, employees, agents, receivers, trustees, attorneys, and legal representatives hereby release, acquit, and forever discharge Frontier and the Rehabilitator, their predecessors, successors, and assigns and their respective past, present, and future employees, agents, attorneys, and legal representatives from any and all claims, demands, causes of action, liabilities, obligations, costs,

3

FIC/FSIM 000141

disbursements, fees, attorneys' fees, expenses, damages, and injuries of every kind, nature, and description based on, relating to, or arising out of the Agreement whether or not now known, suspected, reported, or claimed, whether fixed or contingent and whether currently existing or arising in the future.

3.  Platinum shall file no claim whatsoever in any rehabilitation or other receivership proceeding concerning Frontier based on, arising out of, or relating to the Agreement.

## ARTICLE C - APPROVALS

1.  The Rehabilitator will apply to the Justice of the Supreme Court of the State of New York supervising the Frontier Rehabilitation for an Order approving the terms of this Commutation ("Court Approval").

2.  Platinum shall cooperate fully with the Rehabilitator and will use its best efforts to aid the Rehabilitator in obtaining Court Approval.

## ARTICLE D - REPRESENTATIONS AND WARRANTIES

1.  Platinum hereby represents and warrants to the Rehabilitator that:

(a) Platinum is a company duly organized, validly existing, and in good standing under the laws of the Islands of Bermuda;

(b) Platinum, and the individual executing this Commutation and the Assignment on its behalf, each has the full legal right, power, and authority (corporate and otherwise) to execute, deliver, and perform this Commutation and Assignment;

(c) All corporate action by Platinum necessary for the execution, delivery, and performance of this Commutation and Assignment by Platinum has been duly taken;

4

(d) This Commutation and the Assignment when executed and delivered will constitute a valid and legally binding obligation of Platinum;

(e) No action, consent, or approval of any person, entity, court, or other governmental authority is required by Platinum for the lawful execution or delivery of this Commutation and the Assignment or the lawful performance and consummation of the transactions contemplated hereby;

(f) The execution and delivery of this Commutation and Assignment and the performance and consummation of the transactions contemplated herein will not violate any provision of any law or conflict with the Certificate of Incorporation or By-laws of Platinum or any order, writ, injunction, or decree of any court or other governmental authority;

(g) Platinum has not done, nor will it do, any act or provide any reward whatsoever, or give anything of value to any person(s), entity, or the Rehabilitator as an inducement to enter into this Commutation and Assignment and that the Commutation and Assignment are entered into in good faith and without any collusion or fraud; and

(h) Platinum has not assigned, sold or transferred any interest in the Agreement.

## ARTICLE E - NONDISCLOSURE

1. The Rehabilitator and Platinum expressly agree that the terms and conditions of this Commutation shall not be disclosed by either Party without the prior written consent of the other except to the companies to whom business covered by the Agreement(s) was retroceded or where required by law. The Parties expressly agree that such written consent shall not be unreasonably withheld.

5

FIC/FSIM 000143

2. In the event disclosure is to be made pursuant to this Article Section 1, the disclosing Party shall give prior written notice to the other Party specifying the information to be disclosed, the manner of disclosure, and to whom disclosure is to be made.

3. No disclosure shall be made to any third party unless said third party states in writing to the Parties hereto prior to disclosure that said third party agrees to and is bound by this Article.

## ARTICLE F - DELIVERY OF NOTICE

1. All notices required hereunder shall be in writing and shall be given by personal delivery, or registered or certified mail, return receipt requested, postage prepaid to the addresses set forth in Section 2 of this Article, and shall be deemed given upon receipt. In addition, notice may be given by facsimile transmission and shall be deemed given upon the receipt of the transmission and the mailing of a hard copy of the transmission.

2. Notices to the Parties shall be addressed as follows:

**Notice to the Rehabilitator:**

Superintendent of Insurance of
the State of New York as Rehabilitator of
Frontier Insurance Company
123 William Street
New York, NY 10038-3889

ATTN: John Tafuro
Director of Reinsurance

Notice to Platinum:

Platinum Indemnity Limited
P.O. Box HM 2267
Windsor Place, 3d Floor
18 Queen Street
Hamilton HM JX
Bermuda

ATTN: Andrew McComb
President

6

## <u>ARTICLE G - GENERAL</u>

1. This Commutation constitutes the entire understanding by and between the Parties hereto, superseding all negotiations, prior discussions, representations, promises, and understandings, oral or written, expressed or implied, made prior to or contemporaneous with its execution.

2. This Commutation may only be modified or amended by a written agreement, entered into subsequent to the date of the Commutation and duly executed by the Parties hereto. Such modification or amendment may require approval of the Justice of the Supreme Court of the State of New York supervising the Frontier rehabilitation.

3. This Commutation and any of the rights and/or obligations herein may not be assigned in whole or in part by any of the Parties hereto without prior written approval of the Parties hereto.

4. This Commutation shall be binding upon and inure to the benefit of the Parties hereto and their respective successors, assigns, heirs, executors, and administrators.

5. Waiver by any of the Parties of any term, provision, or condition of this Commutation shall not be construed to be a waiver of any other term, provision, or condition hereof, nor shall such waiver be deemed a waiver of any subsequent breach of the same term, provision, or condition.

6. The failure of any Party to enforce any of the provisions herein shall not be construed to be a waiver of the right of such Party to enforce any such provisions.

7. Each of the Parties hereto shall use its best efforts to cooperate with the other Party hereto in performing all acts necessary for carrying out this Commutation.

8. The Parties to this Commutation are entering into it in good faith, at arm's length, and in the regular course of business and are in agreement that this Commutation is

FIC/FSIM 000145

valid and enforceable. However, in the event that any court of competent jurisdiction or governmental agency renders an order, ruling, or other determination declaring this Commutation or any material provision hereof null and void, it is mutually agreed by the Rehabilitator and Platinum that each shall be restored to the position it was in just prior to entering into this Commutation.

9. If any provision of this Commutation, other than a provision covered in Section 8 of this Article is held by a court of competent jurisdiction to be invalid, the remaining provisions shall remain in full force and effect.

10. This Commutation shall be interpreted, construed, and enforced in accordance with the laws of the State of New York, without regard to its rules concerning conflict of laws.

11. In the event any differences or disputes arise between the Rehabilitator and Platinum with reference to this Commutation or the terms hereof, the same shall be referred to and determined solely in the Frontier rehabilitation pending in the Supreme Court of the State of New York.

12. Platinum hereby subjects itself to the personal jurisdiction of the Supreme Court of the State of New York and appoints the Superintendent of Insurance of the State of New York as its agent for acceptance of service of all process except service of the Order as specified in Article A.

13. The headings in this Commutation are descriptive only and shall not affect the interpretation or construction of this Commutation.

8

FIC/FSIM 000146

**IN WITNESS WHEREOF** the Parties hereto have executed this

Commutation as of the date(s) set forth below.

**GREGORY V. SERIO**
**Superintendent of Insurance of the**
**State of New York as Rehabilitator of**
**Frontier Insurance Company**

BY: _____

RICHARD S. KARPIN
Assistant Special Deputy
Superintendent of Insurance

_____
Witness

DATE: _____

**PLATINUM INDEMNITY LIMITED**

BY: _____

ANDREW McCOMB
President

_____
Witness

DATE: DECEMBER 2, 2002

9

FIC/FSIM 000147

**EXHIBIT F**

## <u>ASSIGNMENT</u>

For Ten Dollars ($10.00) and other good and sufficient

consideration, receipt of which is hereby acknowledged, Platinum Indemnity

Limited, a company organized and existing under the laws of the Islands of

Bermuda ("Assignor"), assigns all right, title, and interest in:

        (i)    the attached Subscription and Shareholders
Agreement (the "Agreement") executed as of
January 16, 1998 between Platinum and Food
Services Insurance Managers, Inc., a corporation
organized and existing under the laws of California
("FSIM"); and

        (ii)   the attached promissory note executed November 8,
2000 whereby FSIM promised to pay $469,515.00
plus interest to Platinum

to GREGORY V. SERIO, Superintendent of Insurance of the State of New York

as Rehabilitator (the "Assignee") of Frontier Insurance Company ("Frontier") of

123 William Street, New York, New York.

Platinum further agrees to execute all documents which may be

necessary to effectuate the assignment of rights under the Agreement, and to

cooperate in any proceedings in which the Assignee may elect to pursue

FIC/FSIM 000148

enforcement of such rights, and to maintain all documents relevant to such rights

and, upon request, to timely provide copies of any such documents.

**PLATINUM INDEMNITY LIMITED**

BY: _____
ANDREW McCOMB
President

_____
Witness

DATE: _DECEMBER 2, 2002_

2