FEATHERSTONHAUGH, WILEY, CLYNE & CORDO, LLP
99 PINE STREET
ALBANY, NEW YORK 12207

(518) 436-0786
FAX (518) 427-0452
rje@fcwc-law.com

RANDALL J. EZICK
OF COUNSEL

January 10, 2007

Honorable Kenneth M. Karas
United States District Court
500 South Pearl Street, Room 920
New York, New York 10007

**RE:    Serio v. Dwight Halvorson Insurance Services, Inc., et. al.**
**1:04-cv-3361**
**Our File No.: FRONIN 2003027**

Dear Judge Karas:

In furtherance of the Court's December 18, 2006 Order attached is the plaintiff's memorandum explaining: 1) why the Court should consider Halvorson's deposition testimony; and 2) the effect of that testimony on the pending Motion for Summary Judgment.

If you require anything further at this time please let us know.

Very truly yours,

FEATHERSTONHAUGH, WILEY, CLYNE
& CORDO, LLP

Randall J. Ezick

RJE:lar
cc:    Lorienton N. A. Palmer - Schindel, Farman & Lipsius LLP

WD003938.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Gregory V. Serio, Superintendent of Insurance
of the State of New York, as Rehabilitator of
FRONTIER INSURANCE COMPANY, and as
Assignee of PLATINUM INDEMNITY, LTD.,

                              Plaintiff,

       -against-                                    04-CV-3361
                                                    (KMK/ECF)

DWIGHT HALVORSON INSURANCE
SERVICES, INC. d/b/a F.S.I.M. INSURANCE
SERVICE and FOOD SERVICES INSURANCE
MANAGERS, INC.,

                              Defendants.

---

**MEMORANDUM OF LAW
IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

                    FEATHERSTONHAUGH, WILEY,
                       CLYNE & CORDO, LLP
                    Attorneys for Plaintiff
                    99 Pine Street
                    Albany, New York 12207
                    Tel. No. (518) 436-0786

WD003818.1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      THE COURT SHOULD CONSIDER THE DEPOSITION
      TESTIMONY OF DWIGHT HALVORSON WITH RESPECT TO
      THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
      JUDGMENT IN ACCORDANCE WITH THE PROVISIONS OF
      FRCP RULE 56(e) AND THE SECOND CIRCUIT HOLDING IN
      WARNER BROS. INC. v. AMERICAN BROADCASTING
      COMPANIES INC.

POINT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      MR. HALVORSON'S DEPOSITION TESTIMONY, WHICH
      TOTALLY CONTRADICTS HIS OPPOSING AFFIDAVIT,
      COMPELS THE GRANTING OF THE PLAINTIFF'S MOTION
      FOR PARTIAL SUMMARY JUDGMENT.

## PRELIMINARY STATEMENT

The plaintiff's motion for partial summary judgment was fully submitted on December 30, 2005. Thereafter on March 31, 2006 a deposition of the defendants through Dwight Halvorson was conducted. At his deposition Mr. Halvorson testified in direct contradiction to his affidavit submitted in opposition to the plaintiff's motion and, in fact, in total accord with the basis for the plaintiff's motion.

The contents of Mr. Halvorson's deposition testimony was brought to the Court's attention during the oral argument of the plaintiff's motion for partial summary judgment by counsel for the plaintiff who was only recently substituted into the case.

The plaintiff now seeks leave to have the Court consider the deposition testimony of Mr. Halvorson in connection with the pending motion.

## POINT I

**THE COURT SHOULD CONSIDER THE DEPOSITION TESTIMONY OF DWIGHT HALVORSON WITH RESPECT TO THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT IN ACCORDANCE WITH THE PROVISIONS OF FRCP RULE 56(e) AND THE SECOND CIRCUIT HOLDING IN WARNER BROS. INC. v. AMERICAN BROADCASTING COMPANIES INC.**

FRCP Rule 56 (e) expressly provides, in part, that on a motion for summary judgment:

> The Court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Thus, the Court clearly has authority and discretion to consider additional materials relevant to a pending motion for summary judgment.

The exercise of this statutory discretion is consistent with the holding of the Second Circuit in Warner Bros. Inc. v. American Broadcasting Companies Inc., 720 F.2d 231 (2d Cir. 1983) in which the Court recognized that:

> Normally, a trial court's reconsideration of a denial of summary judgment occurs upon presentation of a renewal motion for summary judgment (citation omitted). But whether or not the motion is renewed, a trial court has discretion to reconsider an interlocutory ruling, and no abuse of that discretion occurred here since the plaintiffs had a full opportunity to oppose the motion when first made and did not act to their detriment in reliance on the initial ruling.

Accordingly, even if the Court had ruled on the motion, the plaintiff could seek renewal based on the deposition of Mr. Halvorson which was taken after the submission of

the initial motion papers.

It is submitted that the foregoing authority evidences a clear intent that the Court consider all available materials in reaching its determination on a motion for summary judgment in order to reach the correct result. In this case, that would include a consideration of Mr. Halvorson's deposition testimony.

## POINT II

**MR. HALVORSON'S DEPOSITION TESTIMONY, WHICH TOTALLY CONTRADICTS HIS OPPOSING AFFIDAVIT, COMPELS THE GRANTING OF THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.**

The Second Circuit, in Jones v. New York City Health & Hospitals Corporation, 102

Fed. Appx. 223, 2004 U.S. App. LEXIS 11630, recently reaffirmed the principle that:

> It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.

Id. at 226 n. 2, citing, Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1983), see also,

United National Ins. Co. v. The Tunnel, Inc., 988 F.2d 351, 354 (2d Cir. 1993) (a party may

not, in order to defeat a summary judgment motion, create a material issue of fact by

submitting an affidavit disputing his own deposition testimony); Miller v. International

Telephone and Telegraph Corporation, 755 F.2d 20, 24 (2d Cir. 1985) (sworn admission

could not later be contradicted for purpose of creating an issue of fact).

In this case not only does Mr. Halvorson's deposition testimony contradict his

affidavit, his testimony was actually given after the submission of his affidavit at a time when

he was well aware of the affidavit's content. Under such circumstances, there is even more

reason to disregard his affidavit which was obviously crafted to create an issue of fact to

defeat the plaintiff's summary judgment motion.

More specifically, it is the plaintiff's contention that the subject Promissory Note was

executed by Mr. Halvorson to secure monies owed to Platinum because of a shortfall

WD003818.1                                    4

(Negative Balance) in the capital account for the first year of the program, 1998. Mr.

Halvorson argues in his affidavit that he executed the Promissory Note based upon

misrepresentations made to him by Andy McComb that the 4% payments for the second year

of the program (1999) due under the Subscription Agreement, which Halvorson maintains

were to be made by Frontier, had not been made and that this resulted in the shortage in the

"capital contributions" to Platinum (Halvorson affidavit, ¶ 18).

In support of his argument Mr. Halvorson makes numerous factual assertions in his

affidavit. At paragraph "32" of his affidavit he states:

> In connection with the Note, I never spoke with Mr.
> McComb about what he refers to as a "Negative Balance."
> We discussed the "4% of gross written premiums under the
> program" that was to go to Platinum on a monthly basis. That
> is what he told me the Note was to secure. The Note was not
> for any "Negative Balance", and we did not talk about that.

At paragraph "33" he states, "As far as I know, there was no 'Negative Balance . . .' and at

paragraph "8" he states that, "Platinum never provided any proof that the amount stated in

the Note was actually owed . . ."

These contentions, of course, were made in an effort to raise an issue of fact as to

whether the Promissory Note was signed based on misrepresentations relating to payments

due for the second year of the program, 1999, as opposed to a Negative Balance for the first

year of the program when Mr. Halvorson admits FSIM was responsible for the 4% payments.

Mr. Halvorson in his deposition testimony, in stark contrast to his affidavit, admits

that the Promissory Note related solely to the Negative Balance for the first year of the

program, 1998. In his testimony he also admits that he received numerous financial reports

from Platinum showing a Negative Balance for the 1998 year, that he had specific discussions with Andy McComb about the 1998 shortfall and that he understood from the outset of the program that FSIM would be responsible for any Negative Balance because under Bermuda law Platinum could not assume any risk.

The following is a summary of the pertinent portions of Mr. Halvorson's testimony:

p. 49 - He understood from the outset of the program that FSIM was responsible to collateralize the negative balance and that under Bermuda law Platinum could not assume any risk.

p. 53 - He recalled discussions in 1999 regarding the shortfall in collateral in the FSIM cell.

Before execution of the Promissory Note FSIM and Halvorson got regular Financial Reports from Platinum showing the collateral position and Negative Balance for 1998.

> p. 53 - Exhibit 160 - May 31, 1998 report
> p. 61 - Exhibit 29 - September 30, 1998 report
> p. 66 - Exhibit 47 - March 31, 1999 report
> p. 81 - Exhibit 48 - September 30, 1999 report
> p. 86 - Exhibit 49 - December 31, 1999 report
> p. 116 - Exhibit 50 - March 31, 2000 report
> p. 131 - Exhibit 51 (Exhibit A to McComb Reply Affidavit) - June 30, 2000 report - shows a negative balance of $469,515 for 1998 year which is the amount of the Promissory Note

pp. 95-96 - The alleged agreement for Frontier to send an additional 4% of premium to Platinum related only to the 1999 program year and had nothing to do with 1998.

pp. 121-22 - He recalled meeting with Mr. McComb in June of 2000 in California at which time the 1998 year and the shortfall in the collateral was discussed.

pp. 127-29 - He recalled seeing the July 3, 2000 fax from Mr. McComb (Exhibit 15, Exhibit C to the McComb Reply Affidavit) which stated that Platinum would consider receipt of a Note as collateral for the unfunded risk gap on the 1998 underwriting year. Mr. Halvorson then testified that this fax refreshed his recollection as to whether the Note pertained strictly to the '98 program year and when directly asked if the Note dealt only with the '98 program year he answered, "That is correct."

pp. 143-44 - At the time he executed the Note he did not argue about the amount and did not raise any objection in the subsequent months of November or December.

Thus, in his testimony Mr. Halvorson admitted that he knew from the outset that FSIM was responsible under the Subscription and Shareholder Agreement to pay any Negative Balance; that FSIM was provided regular financial reports showing a Negative Balance in collateral for the 1998 year; that he had several discussion with Andy McComb about the shortfall in collateral, including a meeting in June of 2000; and that the subject Promissory Note was executed solely to secure the Negative Balance for the 1998 year and had nothing to do with the 1999 year in which he maintained that Frontier was responsible to pay the 4% contribution due under the Subscription and Shareholder Agreement.

In view of Mr. Halvorson's testimony, which clearly contradicts his affidavit, it is submitted that in accordance with the well settled law in the Second Circuit his affidavit should be disregarded and the plaintiff's motion for partial summary judgment should be granted.

DATED:   January 10, 2007

> FEATHERSTONHAUGH, WILEY,
> CLYNE & CORDO, LLP
> Attorneys for Plaintiff
>
> By: _____
> Randall J. Ezick, Esq
> Bar Roll No.: RJE 1457
> Office and P.O. Address
> 99 Pine Street
> Albany, NY   12207
> Tel. No. (518) 436-0786

WD003818.1                               7