SCHINDEL, FARMAN & LIPSIUS LLP
14 Penn Plaza Suite 500
New York, New York 10122
Attorneys for Defendants
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| Gregory V. Serio, Superintendent of Insurance of the State of New York, as Rehabilitator of FRONTIER INSURANCE COMPANY, and as Assignee of PLATINUM INDEMNITY, LTD, <br><br>                   Plaintiff, <br> vs. <br><br> DWIGHT HALVORSON INSURANCE SERVICES, INC d/b/a F.S.I.M. INSURANCE SERVICES and FOOD SERVICES INSURANCE MANAGERS, INC., <br><br>                   Defendants | 04 CV 3361(KMK) <br><br> Hon. Kenneth M. Karas <br><br> MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. PRELIMINARY STATEMENT

This is an action to recover unspecified money damages based on an alleged breach of written agreements between in Frontier Insurance Company ("Frontier") and Dwight Halvorson Insurance Services ("DHIS"), and the breach of a "Promissory Note" executed by FSIM in favor of Platinum Indemnity Limited ("Platinum"). Plaintiff brings this action as Rehabilitator of Frontier and, on behalf of Frontier as assignee of Platinum Indemnity Limited ("Platinum").

*Brief In Opposition to Plaintiff's Motion*

## The Court Should Deny Frontier's Request to Supplement
## Its Motion That Was Fully Submitted in December 2005

This Memorandum submitted in opposition to Frontier's January 10, 2007 Memorandum, submitted in support of the argument that the Court should consider the March 2006 deposition on this motion for summary judgment that was fully briefed and submitted in December 2005. Defendants oppose the motion for two primary reasons:

First, while it is within the discretion of this Court, pursuant to FRCP Rule 56, whether to consider the March, 2006 deposition of Mr. Halvorson, the Court should not allow Frontier to supplement its motion a year after it was fully submitted based on this inordinate delay for which no excuse or reasonable explanation is provided. Frontier brought the within motion before discovery was completed and before any deposition was competed. The motion was fully briefed and submitted in December 2005. The deposition that Frontier now seeks to submit to the Court was completed three months later on March 31, 2006.

By order dated June 28, 2006, Christopher DuBois was substituted as counsel for Frontier. Frontier did not seek to amend or supplement its motion. The Court thereafter notified the parties on November 18, 2006 that oral arguments on the submitted motion were scheduled for December 18, 2006. On December 12, 2006, a stipulation - substituting counsel- was filed with the clerk of the court. However, Frontier did not seek to amend or supplement its motion. It was not until oral arguments were proceeding on December 18, 2006, that counsel for Frontier made reference to the March 2006 deposition of Dwight Halvorson.

### Mr. Halvorson's Deposition Testimony Shows For the Program Year 1998
### Frontier Was Obligated to Make Payments to Platinum on Behalf of FSIM.

Moreover, even if the Court were to consider the deposition transcript of Mr.

Halvorson, the cited testimony does not further advance Frontier's motion for summary judgment on the Note. While Mr. Halvorson testified that (after looking at various documents at his deposition) the Note was for the 1998 year of the program, he also testified even for the 1998 year, Frontier was obligated to make payments to Platinum on behalf of FSIM. However, it does not appear that this was done.

He also testified that Platinum's claim that there was a shortfall in the collateralization for 1998 made no sense. For example, Mr. Halvorson testified (p 59 line 13 to p. 60 line5):

```
13   Q.      But it was FSIM's obligations under the
14   subscription agreement, not Frontier's; is that correct?
15   A.      It was our obligation to fulfill our commitment
16   on the collateralization of the gap. And one of our
17   commitments was to give him four percent of premium,
18   which we sent him a check every month based upon the
19   premium that we wrote. Okay. We also gave him the
20   $125,000. The rest of the gap was secured by a pledge
21   of our investment income of six percent of gross written
22   premium. Kevin Jeffery was supposed to give that or
23   cede that to Andy.
24           So the only piece that we didn't send Andy was
25   the piece that we sent to Kevin and he was to cede to

                   PHILLIPS LEGAL SERVICES
              Sacramento, CA    (916) 927-3600              60

1    Platinum. Whether or not that ever happened -- well, we
2    assume that it did. And so, consequently, how could
3    there be a shortage if we are sending our obligation in
4    on each and every account and then he's getting a
5    six percent investment income.
```

In short, even for the 1998 year, Frontier was to make payments to Platinum and it does not appear that Frontier made those payments.

Mr. Halvorson explained how communication for the program took place. He explained that he recalls although there were supposed to be periodic reports from Platinum, they were not forthcoming and when one did come the numbers were all wrong. He also explained that his discussions concerning the program, and even the negotiations concerning the terms of the

*Brief In Opposition to Plaintiff's Motion*                              3 of 8

written agreement between FSIM and with Platinum, went through Kevin Jeffrey at Frontier. **(Halvorson Deposition at pp. 53, line 5 to p. 64, line 21).** He recalls getting one report from Platinum, early in the program, and that the information on that report was not correct. In response to this, he spoke with Mr. Jeffrey who assured him he would clear it up with Platinum. **(Halvorson Deposition at p. 58-59).** With regard to his conversations with Platinum, Mr. Halvorson testified (starting at p. 121- line 9 to p. 122 line 20):

```
 9    Q.      Okay.  What did Mr. McComb say to you and what
10    did you say to him?
11    A.      Mr. McComb indicated to me, repeated to me that
12    because he -- he was going through an audit at
13    PowersCourt and he couldn't complete his audit because,
14    according to Bermuda law, he could not take risk on a
15    program, and that he was at risk because there was a
16    shortfall in the collateral of the program and that we
17    had to give him something that would indicate that we
18    were going to make up that shortfall so that he could
19    complete his audit and it would be accepted by the
20    Bermuda authorities.
21    Q.      Let me just stop you there for one second.
22            This discussion related to the '98 program year
23    only?
24    A.      I don't remember if it related to '98 or the
25    whole program.
                     PHILLIPS LEGAL SERVICES
            Sacramento, CA    (916) 927-3600              122
 1            Okay.  The further discussion was that if in
 2    fact we could not agree to begin paying or to pay the
 3    money that he felt was owed, that they would have to
 4    shut down the program and that I would have to deal
 5    directly with the Bermuda authorities, and that I would
 6    much rather deal with him than the Bermuda authorities,
 7    were his words.
 8            I then said, "Well, if we have to" -- I said,
 9    "I disagree with these numbers.  I disagree with the
10    information Frontier is providing you.  But I will be
11    willing to start paying some money on a monthly basis if
12    you could accept that."
13            He then said if I can get the Bermuda
14    authorities to agree with that, either through a
15    promissory note or some other type of collateral, then I
16    am willing to do that.
```

It is in the context of the above testimony that, in response to a specific series of questions, Mr. Halvorson testified that he recalled that the Note was for the 1998 program year. In

*Brief In Opposition to Plaintiff's Motion*    4 of 8

this regard, Mr. Halvorson testified (at page 127 line 11 to 128 line 13):

```
11    Q.        Okay.  The first sentence of that paragraph
12    states that, "Platinum will consider receipt of a note
13    from FSIM and/or Dwight Halvorson Insurance as
14    collateral for the unfunded risk gap on the 1998
15    underwriting year."
16              Do you see that?
17    A.        I see that.
18    Q.        Does that refresh your recollection at all,
19    sir, as to whether or not the note pertained strictly to
20    the '98 program year?
21    A.        Yes.
22    Q.        That's consistent with your recollection?
23    A.        '98 program year.
24    Q.        The note dealt only with the '98 program year;
25    is that right?
                    PHILLIPS LEGAL SERVICES
              Sacramento, CA    (916) 927-3600              128
1     A.        That is correct.
2     Q.        Okay.  And further on in that second numbered
3     paragraph, Mr. McComb sets forth an explanation as to
4     the principal amount of the note, and he places that at
5     $496,860.
6               Do you see that?
7     A.        I see that.
8     Q.        Okay.  Did you at the time believe that figure
9     to be accurate?
10    A.        I didn't know if it was accurate or not.
```

The above testimony on which Frontier relies is simply Mr. Halvorson, reviewing the documents that were presented to him and recollecting what was discussed. However, even the records that were used to refresh his memory refer to both program years. In his deposition testimony and in his affidavit, Mr. Halvorson is consistent that the FSIM did not owe the money that the Note allegedly represented and that Frontier was to make payments to Platinum on behalf of FSIM. In effect, FSIM received no consideration for the Note since it did not owe any money to Platinum at the time the Note was issued.

Throughout the discussions, Mr. Halvorson maintains his position that the numbers being presented by Platinum make no sense. He disagreed with the numbers for two reasons: First, the numbers that Platinum said they were getting from Frontier was different from the numbers that DHIS/FSIM was providing to Frontier. Second, since the amounts that were forwarded to Platinum was based on a percentage, Platinum's claim that there was a shortfall due to increased premiums just

made no sense. Moreover, since Platinum's numbers came from Frontier and Frontier had the numbers wrong, Platinum's numbers were wrong. **(See, e.g., Halvorson deposition at p. 138)**.

Clearly, with regard to the Note, it was understood and agreed that the amount stated in the Note was not a fixed number. Additionally, as even Mr. McComb's letter (Exhibit 18) concedes, the amount of the Note would be reduced based on "return premiums." Mr. Halvorson clarifies that this would mean that the amount of the Note would change based on information that Frontier would provide to Platinum. **(Halvorson deposition at p. 138-139.** However, Frontier now stands in the shoes of Platinum and no longer provides information to Platinum.

The absurdity of this situation is apparent. The amount of the Note is disputed partly based on the fact that the information being provided by Platinum was questioned. Platinum got its information from Frontier and a significant issue is whether Frontier made interest payments to Platinum for the 1998 program year. **(Halvorson Deposition at p. 59-60)**. In addition, it is conceded by Platinum that the amount of the Note would change based on information to be provided by Frontier. **(Exhibit 18 to Halvorson deposition).** Now that Frontier has assumed the Note, Frontier no longer provides any information to Platinum and Platinum no longer provides any information to FSIM. Nevertheless, Frontier (standing in the shoes of Platinum) does not provide any information to DHIS/FSIM.

With regard to the claim that there was a "Negative Balance" for which the Note was provided, Mr., Halvorson makes it clear that there was no discussion of a "negative Balance." (Deposition at pp.131 -132). He further goes on to explain why the claimed deficiency for 1998 made no sense. At pages 62 to 63 he explains:

```
12   Q.      Do you have any reason to believe that that
13   number is inaccurate?
14   A.      Yes.
15   Q.      What is your -- what's the basis for that
16   position?
17   A.      Well, I just read the front page of this.
```

```
18   Q.       Yes, sir.
19   A.       And it says that this 700,000 "is a result of
20   higher than planned level of gross premiums written to
21   date."  That doesn't make any sense that that would have
22   any effect on the collateralization.
23            Secondly, "and a change to the reinsurance
24   terms which added an additional expense of six percent
25   to cover claims handling."  I don't know what that is.

                 PHILLIPS LEGAL SERVICES
          Sacramento, CA    (916) 927-3600              63

 1   Q.       Okay.
 2   A.       I don't know why that would be even coming from
 3   Platinum.  That had to be something that was done
 4   between Platinum and Frontier.
 5   Q.       Okay.  Any other factual basis for your
 6   position that the shortfall figure reflected in
 7   Exhibit 29 is inaccurate?
 8   A.       No.  It's just logical that if we are sending
 9   him a percentage of gross premium written to cover the
10   gap, that it wouldn't matter what the premium went to.
11   If you are getting four percent of 100,000 or four
12   percent of a million, you are still getting four
13   percent.  And if the interest that we are pledging is
14   six percent of gross written premium, it's still
15   six percent.  So the fact that the premium is higher and
16   therefore needs more collateral doesn't make sense
17   because the percentages rise with it.
```

## CONCLUSION

In the exercise of its discretion, the Court should deny Frontier's motion to supplement its motion, submitted in December 2005, with a deposition that was completed in March 2006.

Moreover, since Mr. Halvorson's testimony points out even for the 1998 program Frontier was to make payments to Platinum on behalf of FSIM, Frontier (standing in the shoes of Platinum) should not be heard to argue that it is entitled to summary judgment on the Note when any payments that would be due to make up for a shortfall in collateralization (the claimed basis of the Note) would be due from Frontier.

Accordingly, the motion for summary judgment must be denied.

Dated: January 29, 2007
      New York, New York

                        SCHINDEL, FARMAN, LIPSIUS
                        GERDNER & RABINOVICH, LLP
                        Attorneys Defendants

                        By: _____
                        Lorighton N.A. Palmer (LP3934)
                        14 Penn Plaza, Suite 500
                        New York, NY 10122
                        Telephone No.: (212) 563-1710
                        Fax: (212) 695-6602
                        File No.: 3090.0001

TO:   FEATHERSTONNHAUGH, WILEY, MCLYNE & CORDO, LLP
       99 Pine Street
       Albany, NY 12207
       Attn: Randall J. Ezick, Esq