SCHINDEL, FARMAN, LIPSIUS, GARDNER & ~~RABINOVICH LLP~~ **MEMO ENDORSED**

ATTORNEYS AT LAW

14 PENN PLAZA
SUITE 500
NEW YORK, N.Y. 10122

LORIENTON PALMER
EXTENSION 241
E-MAIL lpalmer@sfl-legal.com

(212) 563-1710
FACSIMILE (212) 695-6602
WEBSITE: www.sfl-legal.com

NEW JERSEY OFFICE
4 CORNWALL DRIVE, SUITE 101
EAST BRUNSWICK, N.J. 08816
(732) 390-0166
FACSIMILE (732) 432-7706

October 18, 2007

**VIA ECF**

Hon. Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

Re: *Frontier Insurance Co. v. Dwight Halvorson Insurance Services, et al*
1:04-cv-3361
Our File No. : 3090.0001

Dear Judge Karas:

This is submitted in response to plaintiff's October 12, 2007 supplemental submission, and pursuant to the Court's directive in the October 4, 2007 Opinion & Order.

Essentially, plaintiff's October 12, 2007 submission states that plaintiff need not address defendants' affirmative defenses since defendants' opposition to plaintiff's motion did not rely on the affirmative defenses. This is not correct. Defendants' December 13, 2005 Memorandum of Law in opposition to the motion does assert the affirmative defenses and states (at pages 6-7):

> Finally, as an affirmative defense, DHIS has alleged a set off against the related claims of Frontier for the monies it paid to Platinum under the Note but which was also paid to Frontier. As such, Frontier's claim (if any) under the Note should await any resolution of its claims that DHIS and/or FSIM owes it premiums under the FSIM Program.

Separately, although counsel refers to the affirmative defenses asserted in paragraphs "149" and "150" of defendants' answer, the affirmative defenses asserted in paragraphs "152" and "153" are also to be considered. The Court is also reminded that in this action, Frontier asserted the protections of the bankruptcy laws as a bar against defendants' counterclaims. Accordingly, defendants' counterclaims were restated as "set offs" in the affirmative defenses.

Paragraph "152" alleges:
Platinum failed and/or refused to provide FSIM with the

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Hon. Kenneth M. Karas
October 18, 2007
Page 2

> "investment income earned on the capital provided to Platinum"
> and any recovery herein from FSIM should be offset by those
> amounts owed by Platinum to FSIM.

Paragraph "153" alleges:
> Frontier improperly withheld funds it collected on behalf of
> Platinum, and as a result FSIM paid the sum of $147,000 to
> Platinum. Frontier was unjustly enriched by that $147,000 and any
> recovery herein should be reduced by that amount.

Frontier also argues that there is no evidence before the Court to support the asserted affirmative defenses. This is also not correct. As noted by the Court (footnote 7 of Opinion & Order) the September 29, 2000 letter from Mr. Halvorson to Mr. McComb clearly disputed the amount allegedly owed to Platinum.

Moreover, Mr. Halvorson testified (for example at pages 61-64 of his deposition) regarding what was agreed among Frontier (Kevin Jeffrey), FSIM and Platinum (Andy McComb), and that the alleged shortfall for which the Note was presented (if any) could only have come from Frontier's failure to forward to Platinum moneys it held/received from FSIM. He testified, for example (at page 63-64):

> It was our obligation to fulfill our commitment
> on the collateralization of the gap. And one of our
> commitments was to give him four percent of premium,
> which we sent him a check every month based upon the
> premium that we wrote. Okay. We also gave him the
> $125,000. The rest of the gap was secured by a pledge
> of our investment income of six percent of gross written
> premium. Kevin Jeffery was supposed to give that or
> cede that to Andy.
> So the only piece that we didn't send Andy was
> the piece that we sent to Kevin and he was to cede to
> Platinum. Whether or not that ever happened -- well, we
> assume that it did. And so, consequently, how could
> there be a shortage if we are sending our obligation in
> on each and every account and then he's getting a
> six percent investment income.

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Hon. Kenneth M. Karas
October 18, 2007
Page 3

  Mr. Halvorson also explained (at page 64):

> No. It's just logical that if we are sending him a percentage of gross premium written to cover the gap, that it wouldn't matter what the premium went to. If you are getting four percent of 100,000 or four percent of a million, you are still getting four percent. And if the interest that we are pledging is six percent of gross written premium, it's still six percent. So the fact that the premium is higher and therefore needs more collateral doesn't make sense because the percentages rise with it.

  In further explaining why he disputed Platinum's claim that there was a shortage, Mr. Halvorson stated (at pages 92-93):

> Yeah. I think that he's probably referring to the fact that because we disagreed with the amounts and we did not ever have any confirmation of how these were calculated or any document that showed us the earnings on interest or investment income from the money that they took from us and were supposed to cede to Platinum, you know, we couldn't confirm any of these numbers, and so until we could get some confirmation of that, you know, we felt that those were inaccurate.

  This interest income is specifically referenced in the Subscription Shareholders Agreement (Exhibit B to defendant's answer), at page 2, paragraph "o", as "investment income" on the "Treaties Investment Funds." It is also referenced, in the Note (at ¶"D") as part of the calculation that to decide if any interest was due on the amounts claimed under the Note.

  This is significant, both on the issue of whether any recovery on the Note should await a determination of what amounts Frontier owes to defendants, and the issue of Frontier's conduct with regard to this Note. As is clear from Mr. Halvorson's testimony, the premiums that defendants forwarded to Frontier were to be passed on to Platinum and held by Platinum in an interest bearing account for the benefit of defendants. This is described at paragraph 13 of Mr. Halvorson's declaration in opposition to the motion. It is also referenced, at paragraph "26" of Mr. McComb's declaration, as "premium dollars flowing into the account."

  In essence, as Mr. Halvorson testified, since defendants paid the 4% and the $125,000 directly to Platinum, the only missing part of the agreed contributions that could have resulted in

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Hon. Kenneth M. Karas
October 18, 2007
Page 4

any shortage was the part that was controlled by Frontier and Platinum. That was the "investment income" on premiums that Frontier was to forward to Platinum. In one of the likely explanations for the claimed shortage, Frontier failed to forward the ceded premiums to Platinum, because of this Platinum has insufficient "interest income" and Platinum turns to FSIM for the Note. Frontier, now standing in the shoes of Platinum, sues to recover on the same Note that came about because of its improper conduct.

Additionally, as suggested by the Court's Opinion & Order, a decision on the motion for summary judgment is not necessarily dispositive of damages. Here, for example, the Note states that interest may be due on the amount of the Note and refers to other documents (for example the Subscription Shareholders Agreement) for the calculation of the interest that may be due. Frontier never addressed the interest claimed. This interest calculation would require an evaluation the related agreements and would also require Frontier/Platinum to submit documentation to prove the "negative balance" that they claim was secured by the Note, including the "investment income" referenced above.

Finally, the issue of the set-off is validly before the Court. On a motion for summary judgment, the Court is empowered to search the record and grant the appropriate relief. *See, e.g., Coach Leatherware Co. Inc. v. AnnTaylor, Inc.*, 933 F2d 162 (2d Cir 1991). Here, defendants' answer (with affirmative defenses) was before the Court and was properly considered by the Court. As the issue of defendants' recovery from Frontier under the asserted affirmative defenses remain outstanding, the amount of damaged claimed by Frontier in its motion for summary judgment "should be held in escrow until Defendants' set off claims are resolved."

Respectfully submitted,
SCHINDEL, FARMAN, LIPSIUS
GARDNER & RABINOVICH, LLP

Lorienton N.A. Palmer

cc: Randall J. Ezick, Esq.
Featherstonhaugh, Wiley & Clyne, LLP

The Clerk is respectfully requested to docket this letter.

SO ORDERED
KENNETH M. KARAS U.S.D.J.
5/20/08